674 So.2d 86 (1996)
KINNEY SYSTEM, INC., Petitioner,
v.
The CONTINENTAL INSURANCE COMPANY, Respondent.
No. 84329.
Supreme Court of Florida.
January 25, 1996.
Rehearing Denied May 16, 1996.
Arthur J. England, Jr. and Charles M. Auslander, of Greenberg, Traurig, Hoffman, Lipoff, Rosen & Quentel, P.A., Miami, for petitioner.
Raoul G. Cantero, III and Jared Gelles of Adorno & Zeder, P.A., Miami, for respondent.
*87 Joel S. Perwin of Podhurst, Orseck, Josefsberg, Eaton, Meadow, Olin & Perwin, P.A., Miami, for amicus curiae Academy of Florida Trial Lawyers.
Wendy F. Lumish of Popham, Haik, Schnobrich & Kaufman, Ltd., Miami, for amicus curiae Product Liability Advisory Council, Inc.
Mitchell W. Berger and Leonard K. Samuels of Berger, Shapiro & Davis, P.A., Fort Lauderdale, for amicus curiae Florida Chamber of Commerce.
Mark A. Cohen and Fred O. Goldberg of Mark A. Cohen & Associates, P.A., Miami, for amici curiae AT & T Corp., Amoco Corporation, The Dow Chemical Company, Northern Telecom (CALA) Corporation, Phelps Dodge International Corporation, Shell Oil Company, Texaco, Inc. and Motorola, Inc.
Robin C. Nystrom, Tallahassee, for amicus curiae State of Florida, Department of Commerce.
Jeffrey B. Crockett of Aragon, Martin, Burlington & Crockett, P.A., Miami, for amici curiae Carnival Corporation, Harris Corporation, Home Shopping Network, Inc. and Ivax Corporation.
KOGAN, Justice.
We have for review the following question certified to be of great public importance:
Is a trial court precluded from dismissing an action on the basis of forum non conveniens where one of the parties is a foreign corporation that:
(a) is doing business in Florida?
(b) is registered to do business in Florida?
(c) has its principal place of business in Florida?
Continental Ins. Co. v. Kinney System, Inc., 641 So.2d 195, 197 (Fla. 4th DCA 1994). The opinion below also expressly and directly conflicts with the opinion of the Third District in National Rifle Association of America v. Linotype Co., 591 So.2d 1021 (Fla. 3d DCA 1991), and with other opinions of the district courts. We have accepted jurisdiction pursuant to article V, section 3(b)(3) and (4), Florida Constitution, to resolve the conflict and address this important question affecting private international law.
Continental Insurance Company became embroiled in a dispute with Kinney System, Inc., about workers compensation insurance premiums. The underlying contract with Continental was negotiated in the New York area to cover Kinney's employees in a variety of different states, including Florida. Continental is a New Hampshire corporation with central operations located in New Jersey. Kinney is a Delaware corporation with headquarters in New York. Continental, moreover, is registered to do business in Florida and operates a Fort Lauderdale claims office. Kinney has a regional office and operates parking garages in Dade County. Based on these Florida connections, Continental sued Kinney in Florida circuit court. However, the trial judge dismissed based on the doctrine of forum non conveniens.
On appeal, the Fourth District reversed. It cited its own precedent in National Aircraft Service, Inc. v. New York Airlines, Inc., 489 So.2d 38, 39 (Fla. 4th DCA 1986), for the proposition that forum non conveniens does not apply where one of the corporate parties to the action is "licensed to do business in Florida, with a place of business in Florida." Addressing a similar problem, however, the Third District has held that, for purposes of Florida's forum non conveniens doctrine, corporate residency is determined by the corporation's principal place of business. National Rifle Ass'n.
Forum non conveniens[1] is a common law doctrine addressing the problem that arises when a local court technically has jurisdiction over a suit but the cause of action may be fairly and more conveniently litigated elsewhere. Forum non conveniens also serves as a brake on the tendency of some plaintiffs to shop for the "best" jurisdiction in which to bring suita concern of special importance in the international context. Commentators generally have noted a growing trend in private international law of attempting to file suit in an American state even for injuries or *88 breaches that occurred on foreign soil.[2] There already is evidence the practice is growing to abusive levels in Florida. Michael J. Higer & Harris C. Siskind, Florida Provides Safe Haven for Forum Shoppers, Fla.B.J., Oct. 1995, at 20, 24-26 (documenting instances of abuse in Florida courts); Linda L. Silberman, Developments in Jurisdiction and Forum Non Conveniens in International Litigation: Thoughts on Reform and a Proposal for a Uniform Standard, 28 Tex. Int'l L.J. 501 (1993) (Florida favored by international plaintiffs); Jacques E. Soiret, The Foreign Defendant: Overview of Principles Governing Jurisdiction, Venue, Extraterritorial Service of Process and Extraterritorial Discovery in U.S. Courts, 28 Tort & Ins. L.J. 533 (1993) (same).
The attractiveness of Florida has arisen from the general belief that our opinion in Houston v. Caldwell, 359 So.2d 858 (Fla. 1978), announced a forum non conveniens doctrine less vigorous than the federal doctrine first outlined in Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1946), as the latter has been refined through the years. The commentators cited above, for example, expressly conclude that lawsuits filed in Florida courts can survive a forum non conveniens challenge that would result in dismissal at the federal-court level. This has led to disturbing results.
Under federal law governing diversity jurisdiction, see Erie R.R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), a Florida lawsuit filed against a non-Florida defendant sometimes can be mandatorily removed to federal court and there dismissed based on the federal doctrine of forum non conveniens, as happened in Sibaja v. Dow Chemical Co., 757 F.2d 1215 (11th Cir.), cert. denied, 474 U.S. 948, 106 S.Ct. 347, 88 L.Ed.2d 294 (1985). However, when a defendant is a Florida resident, removal may not be permitted. Thus, if Florida applies a less vigorous doctrine of forum non conveniens, the state actually is disadvantaging some of its own residentsa result clearly not intended by Houston.
Of greater concern, however, is the fact that the Houston doctrine is resulting in additional burdens imposed upon Florida's trial courts over and above those caused by disputes with substantial connections to state interests. We ourselves must continually ask the legislature for an expansion of judicial funding to meet the ever-increasing crush of litigation now coming into our courthouses. In light of the scarce tax-funded resources available for judicial activities, we must be mindful when doctrines adopted as common law now are leading to counterproductive results. This is a proper concern for us to address pursuant to our inherent authority to modify the common law[3] when demanded by fundamental right or public necessity. Waite v. Waite, 618 So.2d 1360, 1362 (Fla.1993). Today we find a strong public necessity requiring us to revisit our decision in Houston.
The problem clearly has been worsened by other developments in the law. For example, 1984 legislative reforms to Florida's personal jurisdiction statutes substantially expanded the trial courts' ability to hear cases arising on foreign soil. This was achieved by a lessening of traditional connexity requirements. See Ch. 84-2, § 3, Laws of Fla.; see § 48.193, Fla.Stat. (1995). Houston, in other words, was written at a time when significant jurisdictional hurdles to such actions existed that now have been eliminated; and thus, Houston did not contemplate and could not have foreseen the ease with which out-of-state or foreign plaintiffs may now access Florida's trial courts. Nothing in our law establishes a policy that Florida must be a courthouse for the world, nor that the taxpayers of the state must pay to resolve disputes utterly unconnected with this state's interests.
We are aware of arguments raised both for and against the doctrine Florida has followed *89 to date. Some commentators have suggested that states using approaches similar to Florida's actually are impeding their own economic interests. As a general rule, these commentators focus on a perceived need for uniformity in transnational business regulation: Uniformity increases certainty and thereby makes interstate and transnational business easier and less expensive. Proponents of this position generally favor a uniform application of the Gilbert standard or something similar to it. Marc C. Mayfield, Dow Chemical Company v. Alfaro: Aiding the Decline of the Alternative Forum, 14 Hous. J. Int'l L. 213 (1991); Adrian G. Duplantier, Louisiana: A Forum, Conveniens Vel Non, 48 La.L.Rev. 761 (1988).
Others have raised concerns about American multinational corporations going unpunished for the marketing of dangerous products or services abroad. One commentator, for example, has urged a complete abolition of the doctrine at the federal and state level as the best solution for holding American multinational corporations responsible for dangerous products and services sold abroad. Hilmy Ismail, Forum Non Conveniens, United States Multinational Corporations, and Personal Injuries in the Third World: Your Place or Mine?, 11 B.C. Third World L.J. 249 (1991).
While these arguments deserve consideration, we do not agree with the assumptions made by some that the federal doctrine of forum non conveniens necessarily favors business interests or necessarily deprives plaintiffs of adequate fora. Nor are we convinced that any individual state has an absolute obligation to police the foreign actions of American multinational corporations. We certainly do not imply that Florida courts will never serve such a role, but we do believe that the general regulation of foreign activities of multinational corporations more properly is a concern of the federal government, at least where the corporation's connections to Florida are tenuous or nonexistent. Under our federal system, the regulation of international commerce generally rests with Congress, U.S. Const., art. I, § 8, cl. 3, and the supervision of the nation's foreign affairs is forbidden to the states without consent of Congress. U.S. Const., art. I, § 10, cl. 3.
In any event, we do not find that the federal doctrine of forum non conveniens blinds itself to the need for achieving justice, even for foreign plaintiffs. Indeed, the Gilbert standard as elaborated by the federal courts clearly places great emphasis on fairness to the "private interests" of the partieswhile also recognizing that these interests are not the only ones at stake. See Pain v. United Technologies Corp., 637 F.2d 775 (D.C.Cir.1980), cert. denied, 454 U.S. 1128, 102 S.Ct. 980, 71 L.Ed.2d 116 (1981).
The United States Supreme Court has described the "private interests" addressed by the federal doctrine in the following terms:
Important considerations are the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive. There may also be questions to the enforcibility [sic] of a judgment if one is obtained. The court will weigh relative advantages and obstacles to fair trial. It is often said that the plaintiff may not, by choice of an inconvenient forum, "vex," "harass," or "oppress" the defendant by inflicting upon him expense or trouble not necessary to his own right to pursue his remedy. But unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed.
Gilbert, 330 U.S. at 508, 67 S.Ct. at 843 (footnote omitted).
However, the private interests of individuals are not the only concerns to factor into the equation. There also are public interests that we, like the United States Supreme Court, must address. While Florida courts sometimes may properly concern themselves with a suit essentially arising out-of-state, they nevertheless must take into account the impact such practices will have if not properly policedan impact with substantial effect on the taxpayers of this state and on the appropriation of public monies at both the *90 state and local level to pay for the costs of judicial operations.
We must rightly question expenditures of this type where the underlying lawsuit has no genuine connection to the state. Florida's judicial interests are at their zenith, and the expenditure of tax-funded judicial resources most clearly justified, when the issues involve matters with a strong nexus to Florida's interests. But that interest and justification wane to the degree such a nexus is lacking. This is a concern also addressed by the Gilbert rule in its listing of the "factors of public interest" that should weigh in the equation:
Administrative difficulties follow for courts when litigation is piled up in congested centers instead of being handled at its origin. Jury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation. In cases which touch the affairs of many persons, there is reason for holding the trial in their view and reach rather than in remote parts of the country where they can learn of it by report only. There is a local interest in having localized controversies decided at home. There is an appropriateness, too, in having the trial of a diversity case in a forum that is at home with the state law that must govern the case, rather than having a court in some other forum untangle problems in conflict of laws, and in law foreign to itself.
Id.
The federal doctrine also provides a well-defined method of balancing the often competing interests described above. Under Gilbert and its refinements, the courts reviewing a forum non conveniens motion must engage in a four-step analysis, succinctly described by the United States Court of Appeals for the District of Columbia Circuit:
[1] As a prerequisite, the court must establish whether an adequate alternative forum exists which possesses jurisdiction over the whole case. [2] Next, the trial judge must consider all relevant factors of private interest, weighing in the balance a strong presumption against disturbing plaintiffs' initial forum choice. [3] If the trial judge finds this balance of private interests in equipoise or near equipoise, he must then determine whether or not factors of public interest tip the balance in favor of a trial in [another] forum. [4] If he decides that the balance favors such a... forum, the trial judge must finally ensure that plaintiffs can reinstate their suit in the alternative forum without undue inconvenience or prejudice.
Pain, 637 F.2d at 784-85 (cited with approval in C.A. La Seguridad v. Transytur Line, 707 F.2d 1304 (11th Cir.1983)).
As to the first step, the United States Supreme Court has explained it in the following terms:
Ordinarily, this requirement will be satisfied when the defendant is "amenable to process" in the other jurisdiction. Gilbert, 330 U.S., at 506-507, 67 S.Ct., at 842. In rare circumstances, however, where the remedy offered by the other forum is clearly unsatisfactory, the other forum may not be an adequate alternative, and the initial requirement may not be satisfied. Thus, for example, dismissal would not be appropriate where the alternative forum does not permit litigation of the subject matter of the dispute. Cf. Phoenix Canada Oil Co. Ltd. v. Texaco, Inc., 78 F.R.D. 445 (Del.1978) (court refuses to dismiss, where alternative forum is Ecuador, it is unclear whether Ecuadorean tribunal will hear the case, and there is no generally codified Ecuadorean legal remedy for the unjust enrichment and tort claims asserted).
Piper Aircraft Co. v. Reyno, 454 U.S. 235, 254 n. 22, 102 S.Ct. 252, 265 n. 22, 70 L.Ed.2d 419 (1981).
It is important to note that the chief concern of the first level of analysis is the ability to perfect service of process. If the "alternative" forum in theory offers a remedy for the wrong in question but lacks any meaningful mechanism for perfecting process, then it is not truly "alternative" within the meaning of Gilbert. Moreover, the Supreme Court has emphasized that alternative fora are not "clearly unsatisfactory" merely because the available legal theories or potential recovery there are less generous than those available where suit was brought. Rather, the alternative *91 fora are inadequate under the doctrine only if the remedy available there clearly amounts to no remedy at all.[4]Id. at 254, 102 S.Ct. at 265.
The second step of the analysis focuses on how the parties' "private interests" will be affected if the motion is granted or denied something the federal courts have termed the "balance of private conveniences." However, the phrase "private interests" (or its equivalent, "private conveniences") is by no means expansive. As suggested by Gilbert, the term encompasses four broad "practical" concerns: adequate access to evidence and relevant sites, adequate access to witnesses, adequate enforcement of judgments, and the practicalities and expenses associated with the litigation. "Private interests" do not involve consideration of the availability or unavailability of advantageous legal theories, a history of generous or stingy damage awards, or procedural nuances that may affect outcomes but that do not effectively deprive the plaintiff of any remedy. Indeed, it is entirely irrelevant that the alternative forum does not duplicate or approximate the American jury system, so long as a fair mechanism for trial exists in a broad and basic sense.
However, the reviewing court always should remember that a strong presumption favors the plaintiff's choice of forum. Thus, the presumption can be defeated only if the relative disadvantages to the defendant's private interests are of sufficient weight to overcome the presumption. The various factors enumerated in Gilbert should be weighed together with other relevant concerns falling within the general definition of "private interests." For example, one court refused to apply the doctrine where doing so would require translating thousands of pages of documents written in English into other languages, among other reasons. Friends for All Children, Inc. v. Lockheed Aircraft Corp., 717 F.2d 602, 608 (D.C.Cir.1983). This was an issue of practicality and expense associated with access to evidencewhich falls within the category of "private interests."
The third step of the analysis comes into play only if, in weighing the opposing parties' private interest factors, the trial court finds them to be at or near equipoise, after taking into account the presumption favoring the plaintiff's choice of forum. "Equipoise" means simply that the advantages and disadvantages of the alternative forum will not significantly undermine or favor the "private interests" of any particular party, as compared with the forum in which suit was filed. In sum, the competing private interests are substantially in balance in either forum.
In this vein, the trial court should not require strict equivalence of "private interests" in the different fora. Instead, it should keep in mind that the loss of a significant advantage may in fact be canceled out by some other significant gaina result that sometimes can be achieved by stipulation of the parties. In Pain, for example, the defendant moved for dismissal and also (a) stipulated to personal jurisdiction in the alternative forum, (b) waived a possible objection based on a statute of limitations, and (c) agreed to proceed on the issue of damages without contesting liability. Pain, 637 F.2d at 780. The trial court accepted the stipulation, and the Circuit Court agreed that this procedure was permissible. Specifically, the Circuit Court concluded that the stipulation promoted the purposes underlying Gilbert because the parties no longer would encounter the expense of litigating the jurisdictional, statute of limitations, and liability issues. Of special note, the Pain Court found it irrelevant that the moving party apparently was motivated by a belief that the final award in the alternative forum was likely to be less costly. Id. at 794-95.
Where substantial equipoise exists, the trial court then proceeds to weigh the "public interest factors" outlined in Gilberta process the federal courts have termed the "balance *92 of public conveniences." In broad terms, the inquiry focuses on "whether the case has a general nexus with the forum sufficient to justify the forum's commitment of judicial time and resources to it." Pain, 637 F.2d at 791. The Court of Appeals for the District of Columbia Circuit summarized the underlying rationale of this inquiry in the following terms:
Three principles may be derived from the list of public interest factors enunciated in Gilbert: first, that courts may validly protect their dockets from cases which arise within their jurisdiction, but which lack significant connection to it; second, that courts may legitimately encourage trial of controversies in the localities in which they arise; and third, that a court may validly consider its familiarity with governing law when deciding whether or not to retain jurisdiction over a case. Thus, even when the private conveniences of the litigants are nearly in balance, a trial court has discretion to grant forum non conveniens dismissal upon finding that retention of jurisdiction would be unduly burdensome to the community, that there is little or no public interest in the dispute, or that foreign law will predominate if jurisdiction is retained.
Id. at 791-92 (footnotes omitted). As a corollary, if the public interest factors themselves are at or near equipoise, then the third step of the inquiry will provide no basis for defeating the presumption favoring plaintiff's choice of forum. See Friends for All Children, 717 F.2d at 610.
The fourth and final level of analysis is designed to ensure that when a forum non conveniens dismissal is granted, the remedy potentially available in the alternative forum does not become illusory. There are at least three ways the courts have sought to guarantee the potential remedy.[5] As the Pain court suggested, one is to make sure that suit can be initiated in the alternative forum "without undue inconvenience or prejudice." Pain, 637 F.2d at 785. In other words, the courts in the alternative forum must genuinely be open and available to potentially provide a convenient remedy for the injury or breach complained of, assuming the injury or breach is proved and otherwise meets the applicable legal requirements.
Second, Pain also indicated that when the parties have stipulated to conditions upon which the forum non conveniens dismissal is premised, the dismissing court may "expressly provid[e] that the suits could be reopened [in the dismissing court] without prejudice should any of the stipulated conditions fail to materialize." Id. In a similar vein, we hold that every motion for forum non conveniens dismissal filed in Florida shall automatically be deemed to include two stipulated conditions: (1) that the moving party stipulates that the action will be treated in the new forum as though it had been filed in that forum on the date it was filed in Florida, with service of process accepted as of that date; and (2) that the plaintiff will lose the benefit of all stipulations made by the defendant if it fails to file the action in the new forum within 120 days after the date the Florida dismissal becomes final.
Third, the dismissing court's order also may retain jurisdiction over assets located within Florida where those assets are at issue in the dismissed case. This may include situations in which the assets may be necessary to satisfy any judgment in the alternative forum. However, the dismissing court must make a finding that the assets in question are properly the subject of such orders by a Florida court. For this purpose, we commend Judge Schwartz's persuasive analysis in Mendes v. Dowelanco Industrial LTDA, 651 So.2d 776, 778-79 (Fla. 3d DCA 1995).
We are mindful that the doctrine outlined above will limit the ability of some persons to take advantage of Florida's judicial system. While it is true that the Florida Constitution guarantees every person access to our courts for redress of injuries, art. I, § 21, Fla. Const., that right has never been understood as a limitless warrant to bring the world's litigation here. Even Houston is premised *93 on the assumption that reasonable limits must be imposed where the litigation's connection to Florida interests is tenuous at best. Moreover, the obvious purpose underlying article I, section 21 is to guarantee access to a potential remedy for wrongs, not to provide a forum to the world at large. Thus, the right of access will not bar dismissal to the degree that such Florida interests are weak and to the degree that remedies are available in convenient alternative fora with better connections to the events complained of. Id. Put another way, if a potential remedy exists in the alternative forum, then the "remedy requirement" of article I, section 21 actually is being honored. Id.
Based on the foregoing discussion, we are persuaded that the time has come for Florida to adopt the federal doctrine of forum non conveniens. The use of Florida courts to police activities even in the remotest parts of the globe is not a purpose for which our judiciary was created. Florida courts exist to judge matters with significant impact upon Florida's interests, especially in light of the fact that the taxpayers of this state pay for the operation of its judiciary. Nothing in our Constitution compels the taxpayers to spend their money even for the rankest forum shopping by out-of-state interests.
The rule in Houston has led to this unintended result and is likely to lead to even further abuse of judicial resources in the future. Accordingly, we recede from Houston to the extent it conflicts with the views expressed here, and we hereby adopt the federal rule of forum non conveniens as outlined above.[6] All decisions of the district courts relying upon the pertinent holdings of Houston should be considered disapproved, including the decision of the court below, to the extent they are inconsistent with our views here. We further recede from all other case law issued by this Court to the extent it expressly relies on the overruled portions of Houston. For purposes of Florida's forum non conveniens doctrine, opinions of the federal courts that harmonize with the views expressed above should be considered persuasive, though not necessarily binding.
We address two final points relevant to this case. First, under our holding today it now is immaterial how "corporate residency" is determined, because a corporation's various connections with Floridaif any will only be factors to be weighed in the balance of conveniences, as outlined above.[7] Therefore we answer all three parts of the certified question in the negative as qualified in this opinion. Even the fact that a corporation has its principal place of business in Florida does not necessarily preclude application of the doctrine of forum non conveniens. Instead, the trial court should gauge the situation using the "balance of conveniences" approach.
Second, we further recognize that an improper application of the instant opinion could have a detrimental impact on some cases presently pending in the lower courts. Where new or renewed motions for forum non conveniens dismissal are prompted in such cases by this opinion, we direct that the *94 lower courts shall not order dismissal if doing so would actually undermine the interests that forum non conveniens seeks to preserve. These include avoiding a waste of resources (including resources already expended), avoiding forcing a plaintiff into a forum where a statute of limitation may have expired, or other similar problems. For example, we believe it would be contrary to the doctrine to order dismissal where the partiesrelying on Houstonhave substantially completed discovery or are now ready for a Florida trial or where they have completed trial and are seeking a Florida appeal, unless all parties consent to an application of the doctrine outlined here. Otherwise our holding today shall apply to all actions not yet final at the trial level and, of course, to all future actions filed.
This cause is remanded to the district court for further proceedings consistent with our views here. On remand, the district court shall determine whether the trial court properly applied the federal doctrine as outlined here. If not, the district court shall vacate the trial court's order of dismissal and remand for proceedings consistent with this opinion.
It is so ordered.
GRIMES, C.J., and OVERTON, SHAW, HARDING, WELLS and ANSTEAD, JJ., concur.

APPENDIX
RULE 1.061 FORUM NON CONVENIENS
(a) Grounds for Dismissal. An action may be dismissed on grounds a satisfactory remedy may be more conveniently sought in a jurisdiction other than Florida where:
(1) The trial court finds that an adequate alternate forum exists which possesses jurisdiction over the whole case;
(2) The trial court finds that all relevant factors of private interest favor the alternate forum, weighing in the balance a strong presumption against disturbing plaintiffs' initial forum choice;
(3) If the balance of private interests is at or near equipoise, the court further finds that factors of public interest tip the balance in favor of trial in the alternate forum; and
(4) The trial judge ensures that plaintiffs can reinstate their suit in the alternate forum without undue inconvenience or prejudice.
The decision to grant or deny the motion for dismissal rests in the sound discretion of the trial court, subject to review for abuse of discretion.
(b) Stipulations in General. The parties to any action for which a satisfactory remedy may be more conveniently sought in a jurisdiction other than Florida may stipulate to conditions upon which a forum non conveniens dismissal shall be based, subject to approval by the trial court. The decision to accept or reject the stipulation rests in the sound discretion of the trial court, subject to review for abuse of discretion.
(c) Statutes of Limitation. In moving for forum non conveniens dismissal, defendants shall be deemed to automatically stipulate that the action will be treated in the new forum as though it had been filed in that forum on the date it was filed in Florida, with service of process accepted as of that date.
(d) Failure to Refile Promptly. When an action is dismissed in Florida for forum non conveniens, plaintiffs shall automatically be deemed to stipulate that they will lose the benefit of all stipulations made by the defendant, including the stipulation provided in subdivision (c) of this Rule, if plaintiffs fail to file the action in the new forum within 120 days after the date the Florida dismissal becomes final.
(e) Waiver of Automatic Stipulations. Upon unanimous agreement, the parties may waive the conditions provided in subdivisions (c) or (d), or both, only where they demonstrate and the trial court finds a compelling reason for the waiver. The decision to accept or reject the waiver shall not be disturbed on review if supported by competent substantial evidence.

*95 (f) Reduction to Writing. The parties shall reduce their stipulation to a writing signed by them, which shall include all stipulations provided by this rule, and which shall be deemed incorporated by reference in any subsequent order of dismissal.

Court Commentary
This section was added to elaborate on Florida's adoption of the federal doctrine of forum non conveniens in Kinney System, Inc. v. Continental Insurance Co., 674 So.2d 86 (Fla.1996), and it should be interpreted in light of that opinion.
Subdivision (a) codifies the federal standard for reviewing motions filed under the forum-non-conveniens doctrine. Orders granting or denying dismissal for forum non conveniens are subject to appellate review under an abuse-of-discretion standard.
As stated in Kinney, the phrase "private interests" means adequate access to evidence and relevant sites, adequate access to witnesses, adequate enforcement of judgments, and the practicalities and expenses associated with the litigation. Private interests do not involve consideration of the availability or unavailability of advantageous legal theories, a history of generous or stingy damage awards, or procedural nuances that may affect outcomes but that do not effectively deprive the plaintiff of any remedy.
"Equipoise" means that the advantages and disadvantages of the alternative forum will not significantly undermine or favor the "private interests" of any particular party, as compared with the forum in which suit was filed.
"Public interests" are the ability of courts to protect their dockets from causes that lack significant connection to the jurisdiction; the ability of courts to encourage trial of controversies in the localities in which they arise; and the ability of courts to consider their familiarity with governing law when deciding whether or not to retain jurisdiction over a case. Even when the private conveniences of the litigants are nearly in balance, a trial court has discretion to grant a forum non conveniens dismissal upon finding that retention of jurisdiction would be unduly burdensome to the community, that there is little or no public interest in the dispute, or that foreign law will predominate if jurisdiction is retained.
Subdivision (b) provides that the parties can stipulate to conditions of a forum non conveniens dismissal, subject to the trial court's approval. The trial court's acceptance or rejection of the stipulation is subject to appellate review under an abuse-of-discretion standard.
Subdivisions (c) and (d) provide automatic conditions that shall be deemed included in every forum-non-conveniens dismissal. The purpose underlying subdivision (c) is to ensure that any statute of limitation in the new forum is applied as though the action had been filed in that forum on the date it was filed in Florida. The purpose underlying subdivision (d) is to ensure that the action is promptly refiled in the new forum. Both of these stipulations are deemed to be a part of every stipulation that does not expressly state otherwise, subject to the qualification provided in subdivision (e).
Subdivision (e) recognizes that there may be extraordinary conditions associated with the new forum that would require the waiver of the conditions provided in subdivisions (c) and (d). Waivers should be granted sparingly. Thus, the parties by unanimous consent may stipulate to waive those conditions only upon showing a compelling reason to the trial court. The trial court's acceptance or rejection of the waiver may not be reversed on appeal where supported by competent substantial evidence.
Subdivision (f) requires the parties to reduce their stipulation to written form, which the parties must sign. When and if the trial court accepts the stipulation, the parties' agreement then is treated as though it were incorporated by reference in the trial court's order of dismissal. To avoid confusion, the parties shall include the automatic stipulations provided by sections (c) and (d) of this rule, unless the latter are properly waived under subdivision (e). However, the failure to include these automatic conditions in the *96 stipulation does not waive them unless the dismissing court has expressly so ruled.
NOTES
[1] The Latin phrase "forum non conveniens" translates as "inconvenient forum."
[2] American states are attractive compared to some foreign nations because of more liberal discovery rules, a perception of more generous juries, and the ability to obtain lawyers on a contingent-fee basis.
[3] The legislature has not attempted to codify any version of the common law doctrine of forum non conveniens, but has approved only a far more limited set of venue statutes generally governing transfers of actions among different courts within Florida. See ch. 47, Fla.Stat. (1993).
[4] At least one jurisdiction has held that the lack of an alternative forum will not bar application of the doctrine where the plaintiff itself is a foreign government that has failed to provide itself with an adequate alternative forum through its own judiciary. Islamic Republic of Iran v. Pahlavi, 62 N.Y.2d 474, 478 N.Y.S.2d 597, 467 N.E.2d 245 (1984), cert. denied, 469 U.S. 1108, 105 S.Ct. 783, 83 L.Ed.2d 778 (1985). This is an admittedly rare situation in which equitable concerns require application of the doctrine notwithstanding the lack of an alternative forum.
[5] We do not consider this listing exhaustive of all possible measures the dismissing court may properly take.
[6] Recognizing that our holding is a significant departure in existing court procedure, we believe it is necessary to codify our holding today in the Florida Rules of Civil Procedure. Accordingly, we adopt emergency Rule of Civil Procedure 1.061, which is attached to this opinion as an appendix. The emergency rule is effective immediately. The Clerk shall publish the rule as soon as practicable, and we will receive commentary from the public for a period of 90 days after the date this opinion is issued. At the expiration of the 90-day period, we will take any further action regarding the new rule that we deem necessary in light of the public comment we receive. We further refer the emergency rule to the Civil Procedure Rules Committee of The Florida Bar for its study and recommendations regarding a permanent rule.
[7] Likewise, the fact one of the parties is a Florida "resident" (however that term is defined) is but one factor to be considered in the balance of conveniences. As noted in the federal cases, there will be instances where a forum non conveniens dismissal would be appropriate notwithstanding one of the parties' Florida residency. For example, the trial court may have discretion to dismiss under the doctrine where a plaintiff has named a "straw man" Florida defendant who is merely the employee of the actual target of the dispute, an out-of-state corporation. In that situation, residency is that of the real party in interest, not the straw man. A good overview of the role played by residency in balancing the conveniences is provided in Pain v. United Technologies Corp., 637 F.2d 775, 795-98 (D.C.Cir. 1980).