971 So.2d 1001 (2008)
HILTON INTERNATIONAL CO. and Hilton Hotels Corporation, Appellants,
v.
August CARRILLO, et al., Appellees.
No. 3D07-1773.
District Court of Appeal of Florida, Third District.
January 9, 2008.
*1003 Greenberg Traurig and Hilarie Bass, Elliot H. Scherker, Mark A. Salky and Daniel M. Samson, Miami; Kardaras and Kelleher, for appellants.
Motley Rice and Robin R. Anderson, Ronald L. Motley, Jodi Westbrook Flowers, Donald A. Migliori, Michael E. Elsner, Justin B. Kaplan, Miami, and John M. Eubanks, for appellees.
Before COPE, GREEN, and SALTER, JJ.
SALTER, J.
Appellants Hilton International Company and Hilton Hotels Corporation ("Hilton") appeal a non-final order denying their motion to dismiss for forum non conveniens. Because we find the appellees' connection to Florida too attenuated, and because there are adequate and more convenient forums in Israel and Egypt, we reverse the trial court and remand with instructions to grant Hilton's motion to dismiss for forum non conveniens.
The Taba Resort Attack and the Florida Lawsuit
On October 7, 2004, terrorists attacked the Taba Hilton Resort in Taba Village, Egypt. Thirty-five persons died in the attack, and hundreds more were injured. Among the injured were August and Cheryl Carrillo, Maxim and Algaria Deri, and Bryan and Karola Jordan. Ludmilla and Oleg Faizakov were among the dead. The Carrillos and Bryan Jordan are citizens of the United States residing abroad. Karola Jordan, Bryan Jordan's wife, is a German citizen. The Deris are Israeli citizens and residents, as were the Faizakovs.[1]
The surviving victims, together with the Faizakovs' survivors (also Israeli citizens), brought suit in the circuit court in Miami against Hilton, alleging that it failed to take sufficient security precautions at its *1004 resort in Taba Village. The complaint alleged that Hilton International had its principal place of business in Coral Gables, Florida, and had recently been acquired by Hilton Hotels Corporation. Hilton Hotels Corporation, according to the complaint, regularly does business in Florida, both through the Coral Gables office, and on its own. Hilton moved to dismiss the complaint on the grounds of forum non conveniens, and the trial court denied the motion.
The trial court found that the Carrillos were Florida residents based on contacts the couple had to the state prior to the terrorist attack. Specifically, the court's order lists a warranty deed from 1988, the Carrillos' children's baptism in 2001, and "general familial contacts." Further, the court reasoned that Ms. Carrillo's 2005 Florida driver's license and voter registration indicated that the couple intended to live in Florida following Mr. Carrillo's service to his country abroad.[2]
The trial court gave the Carrillos an "edge" in the balancing of interests specified by Kinney System, Inc. v. Continental Insurance Co., 674 So.2d 86, 90 (Fla.1996). Based on that determination, the court then extended that "edge" to the other six plaintiffs who had no contacts with Florida. Finding that the other plaintiffs' claims raised the same factual matters and questions of law, the court applied Florida's "liberal joinder provision"[3] and denied the motion to dismiss as to those plaintiffs as well. This appeal followed.
Standard of Review
A lower court's ruling on a motion to dismiss is reviewed for an abuse of discretion. Kinney, 674 So.2d at 90-94. Misapplication of the Kinney factors may be redressed on appeal where the record is sufficiently developed and the facts pertinent to the forum non conveniens issue are undisputed. R.J. Reynolds Tobacco Co. v. Carter, 951 So.2d 105, 107 (Fla. 3d DCA 2007).
The Forum Non Conveniens Analysis
Out of growing concern that Florida was becoming a "courthouse for the world," Kinney, 674 So.2d at 88, the Florida Supreme Court adopted the federal forum non conveniens standard.[4] Under this standard, a court presented with a forum non conveniens motion is to consider: 1) whether an adequate alternative forum exists which has jurisdiction over the case; 2) all relevant private interests, keeping in mind the "strong presumption against disturbing [a] plaintiff's initial forum choice"; 3) if the balance of private interests is in or near equipoise, whether relevant public interests tip the scale in favor of another forum; and 4) if the balance favors an alternative forum, the court must ensure that plaintiffs can bring suit in the alternative forum. Id. at 90.
1. Adequate Alternative Forum
It is undisputed in this case that there is an adequate alternative forum: Israel. The plaintiffs acknowledge this.
Hilton contends that Egypt is also an adequate alternative forum, and that the trial court should have so found. Hilton's position is well taken.
The trial court found Egypt to be an inadequate forum because it was the place where the attack occurred, there were strong anti-American and anti-Israeli sentiments *1005 in the country, and the plaintiffs would not be allowed to testify under the Egyptian legal system.
The question of whether a forum is adequate can ordinarily be answered in the affirmative if a defendant is amenable to process in the alternative jurisdiction. Id. Further, "[a] foreign forum is adequate when the parties will not be deprived of all remedies or treated unfairly, even though they may not enjoy the same benefits as they might receive in an American Court [sic]." Ciba-Geigy Ltd. v. Fish Peddler, Inc., 691 So.2d 1111, 1115 (Fla. 4th DCA 1997). See Piper Aircraft v. Reyno, 454 U.S. 235, 254, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981) (finding that dismissal may be improper where "the remedy provided by the alternative forum is so clearly inadequate or unsatisfactory that it is no remedy at all"); Kinney, 674 So.2d at 90. Additionally, a forum may be inadequate if it is grossly inefficient or given to extreme levels of partiality. Leon v. Millon Air, 251 F.3d 1305, 1312 (11th Cir.2001).
Here, Hilton stipulates that it is amenable to process in Egypt and Israel. Of the reasons stated by the trial court regarding Egypt's inadequacy in hearing the case, none are sufficient to justify that finding. There is no per se rule of inadequacy applicable to a country in which terrorists attack innocent persons. Moreover, Egypt's political and cultural climates do not make Egypt an inadequate forum absent some direct, demonstrated, and adverse connection to its legal system. See Servo Kinetics, Inc. v. Tokyo Precision Instruments Co., 352 F.Supp.2d 787, 791 (E.D.Mich.2004).
A foreign forum does not need to be perfect. See Leon, 251 F.3d at 1311 (citations omitted). Rather, as other courts have found, absent evidence of extreme partiality or gross inefficiency, a foreign forum is adequate if there is a satisfactory remedy and a defendant is amenable to process in that forum. Although the plaintiffs' expert witness regarding the Egyptian judicial system, Mr. El-Shahid, opined that Egyptian courts might take five to ten years to render a final judgment in such a case, that is not "grossly inefficient" or tantamount to deprivation of any remedy.[5] American courts have found Egypt to be an adequate forum despite the differences between its judicial system and the United States'. See Bigio v. Coca-Cola Co., No. 97 Civ. 2858(BSJ), 2005 WL 287397 (S.D.N.Y. Feb. 3, 2005), rev'd on other grounds, 448 F.3d 176 (2d Cir.2006); Younis v. Am. Univ. in Cairo, 30 F.Supp.2d 390, 395 (S.D.N.Y.1998).
Mr. El-Shahid's opinions regarding the more conservative compensation awarded by Egyptian judges suggests a forum-shopping or tactical disadvantage not the inadequacy of Egypt as a forum. Kinney, and Gilbert before it, rejected any notion that a "less generous" forum is an unsatisfactory or inadequate forum.[6]
Finally, Mr. El-Shahid's concern that the plaintiffs would have to be represented by Egyptian attorneys, allegedly placing the plaintiffs "in an awkward and difficult position of locating counsel in a country completely foreign to them and where they *1006 or their loved ones had suffered an extreme trauma as a result of the bombing," does not support an argument that the country's judicial system is inadequate. The record does not support any contention that any of the plaintiffs will be unable to retain Egyptian counsel or that any of them have tried to do so and been rejected. The trauma of returning to the country in which the traumatic and horrifying events took place is not a factor precluding resolution of the claims by the judiciary of that country.[7]
As already stated, we agree with the trial court that Israel is an adequate alternative forum; we conclude that Egypt is also an adequate alternative forum.
2. The Private Interests
The trial court refused to grant Hilton's motion to dismiss in part because the court found that the parties' private interests were near equipoise. We again disagree.
The private interests a court may consider include (without limitation) "adequate access to evidence and relevant sites, adequate access to witnesses, adequate enforcement of judgments, and the practicalities and expenses associated with the litigation." Kinney, 674 So.2d at 91. Underlying any consideration of these private interests is a presumption that favors a plaintiff's choice of forum. Id.
This presumption is rebuttable, however. The deference owed to a plaintiff's choice is at its highest level when that choice was motivated by legitimate reasons, i.e., the plaintiff's convenience and the ability to obtain jurisdiction over the defendant. Iragorri v. United Techs. Corp., 274 F.3d 65, 73 (2d Cir.2001). Of course, bona fide connections to the forum of choice further serve to strengthen the deference given to a plaintiff's choice. Id. Conversely, this deference dissipates if a plaintiff's forum choice was made in the absence of such connections. Id.; See Pollux Holding Ltd. v. Chase Manhattan Bank, 329 F.3d 64 (2d Cir. 2003).
In this case, the trial court gave excessive deference to the plaintiffs' choice of forum. Of the eight plaintiffs, only three are American citizens. Of those three, only two have any connection to Florida (the Carrillos), and that connection is tenuous at best. The Carrillos did not reside in this state or own property here before the bomb incident; they vacationed here intermittently. The 1988 warranty deed noted by the trial court was to Mr. Carrillo's father. Any indicia of intent to reside in Florida cited by the Carrillos were acquired after the horrific incident that is the subject of the lawsuit.
For example, Ms. Carrillo acquired her Florida driver's license and voter's registration in 2005, the year after the bombing. All of the plaintiffs currently live overseas, calling into question the argument that their forum choice was a matter of convenience. See Pollux, 329 F.3d at 73. Hilton, on the other hand, is amenable to suit in Egypt or Israel, as well as in Florida.
*1007 Turning next to Hilton's private interests, Hilton's experts opined that if the case is tried in the United States, Hilton will be unable to compel the testimony of Egyptian witnesses and the production of Egyptian documents. The plaintiffs' experts did not contradict Hilton on this point. Under the record before us, Hilton would not be able to mount an effective defense if the case is tried in the United States. Substantially all of the evidence is located in Egypt, as are most of the witnesses.[8] The site of the attack is located in Egypt, and the documents are in Arabic. Arabic is an official language in both Israel and Egypt, and the courts of both countries are well equipped to deal with documents in that language.
The plaintiffs are correct that one of the Hilton defendants has an office in Miami-Dade County. Neither that fact, the confidential management agreement signed by that defendant, nor other record evidence indicates that the Florida office had any operational control over the resort in Egypt or the tragic incident.
3. Public Interest
Although we conclude that the factors of private interests weigh heavily in favor of Egypt or Israelobviating the need under Kinney to consider factors of public interestwe nevertheless address the trial court's findings on those points in case further appellate consideration ensues.
The trial court considered the prospect that its unfamiliarity with Egyptian and Israeli law "would be a significant factor weighing in favor of dismissal, if Egyptian or Israeli law were to apply," citing Piper Aircraft Co. v. Reyno, 454 U.S. 235, 260, n. 9, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981). The trial court then concluded, however and this was errorthat "Florida law will govern" because "the conflict of law in the instant case is a false conflict". The trial court reached this result by concluding that the laws of Florida, Egypt, and Israel "would produce the same outcome under the facts of the case," citing Tune v. Philip Morris, Inc., 766 So.2d 350, 352 (Fla. 2d DCA 2000). This determination was based in turn on the trial court's statement that Hilton's "counsel and their experts went to great lengths in proving that Egyptian and Israeli laws have a cause of action similar to one available to plaintiffs in Florida."
An examination of Hilton's motion to dismiss and an Egyptian expert's affidavit, however, reveals only an assertion that the Egyptian Civil Code recognizes the causes of action asserted by the plaintiffs in Florida. That contention does not support the sweeping conclusion that the lawsuit would have the same outcome no matter which law is applied. A Florida court attempting to try the case would first apply the "significant relationships" test to determine which law applies to the alleged breaches of duty and resulting damages. Bishop v. Fla. Specialty Paint Co., 389 So.2d 999 (Fla.1980). The law of Egypt, where the injuries occurred and Hilton International or others were to provide security to guests, would apply unless some other jurisdiction has a more significant relationship to the occurrence and the parties. The plaintiffs provided no reservation or lodging contract, and no other evidence, to demonstrate why Florida would have a more significant relationship to the occurrence and the parties than Egypt or Israel.
The significance of the conflicts and governing law question is enormous. Beyond the threshold question of whether a cause *1008 of action exists, the choice of governing law may also affect pretrial and trial procedure; the admissibility of evidence; conditions precedent; the mandatory or permissive joinder of claims against others; comparative negligence and comparative liability among those found responsible; the effect (if any) of insurance and collateral recoveries; the availability of punitive as opposed to compensatory damages; rights of subrogation, contribution, and immunity; sovereign immunity (as to the Egyptian tourist police and other governmental entities involved according to the parties' affidavits); and appellate rights. Hilton did not allege or concede that the outcome of the lawsuit would be the same in each of the three jurisdictions; it simply demonstrated, as it was required to, that Egyptian law afforded a remedy to the plaintiffs for the type of claim alleged in the Florida lawsuit.
On the record presented, Egyptian law will predominate if the lawsuit is prosecuted here in Florida, and that is another factor weighing against retention of the case. Kinney, 674 So.2d at 92. Finally, Florida's interest in the responsibilities of hotels and tourism companies in Egypt seems attenuated in comparison to Egypt's obvious interest in assuring that the victims of terrorism in that country have redress for their injuries suffered there.
4. Ability to Reinstate
When, as here, the balance favors an alternative forum (Egypt or Israel, in this instance), the movant must assure the court that the plaintiffs can reinstate their lawsuit in the alternative forum without undue inconvenience or prejudice. In this case, Hilton is deemed to have accepted the stipulations set forth in Rule 1.061(b) and (c), and reinstatement of the lawsuit in the alternative jurisdictions has not been shown to cause undue inconvenience or prejudice.
Conclusion
The trial court's concern for the plaintiffs and their emotional well-being is admirable. Under Rule 1.061, Kinney, and its progeny, however, Hilton's motion should have been granted. For the stated reasons, we reverse the trial court's order and remand for entry of an order granting the Appellant's motion to dismiss under Florida Rule of Civil Procedure 1.061. This ruling is, of course, without prejudice to the plaintiffs' right to refile their lawsuit in Israel or Egypt.
Reversed and remanded.
NOTES
[1] The order below found, at page 8, that four of the plaintiffs are Florida residents. That is incorrect. At the time of the tragic incident, no plaintiff lived in Florida, owned property in Florida, had a Florida driver's license or voter's registration card, or could otherwise be considered a "resident" of Florida. After the incident, but before the lawsuit was filed here, Mr. and Mrs. Carrillo acquired some indicia of Florida residency.
[2] Both Mr. Carrillo and Mr. Jordan are civilian employees of the Army Corps of Engineers.
[3] Fla. R. Civ. P. 1.270.
[4] The Kinney decision was codified as Florida Rule of Civil Procedure 1.061.
[5] Although the Florida courts aspire to resolve cases such as this within 18 months from date of filing (Fla. R. Jud.Admin.2.250(a)(1)(B)), complex cases involving many witnesses in several different countries, extensive discovery, and other logistical challenges frequently take longer than five years to conclude in Florida. This is not "gross inefficiency," but rather the hallmark of a complex international lawsuit.
[6] Kinney, 674 So.2d at 90-91; Gilbert, 330 U.S. at 510, 67 S.Ct. 839.
[7] We are entirely sympathetic to the trauma suffered by the plaintiffs. But global tourism, affected by terrorism that has extended even to the "safe" underground system of London and trains in Madrid, sometimes requires tourists to rely on the medical and legal infrastructure of the countries they visit. Further, the "reliving" of the bombing through testimony and trial will be traumatic irrespective of the country in which it occurs. The "emotional burden" considered in Guidi v. Inter-Continental Hotels Corp., 224 F.3d 142, 147 (2d Cir.2000), and by the trial court here is not a factor taken into account by Florida courts following Gilbert and Kinney.
[8] Records custodians, governmental investigators, and security personnel were and are in Egypt. If none can be compelled to testify in Florida or to be deposed in Egypt as part of a Florida proceeding, we doubt that trial here would be convenient, just, or efficient.