# Third District Court of Appeal

**State of Florida**

Opinion filed August 16, 2017.

————————

No. 3D16-1348
Lower Tribunal No. 15-17805

————————

## GLF Construction Corporation,
Appellant,

vs.

## Credinform International, S.A.,
Appellee.

An Appeal from a non-final order from the Circuit Court for Miami-Dade County, Peter R. Lopez, Judge.

Ferencik Libanoff Brandt Bustamante & Goldstein and Ira Libanoff (Fort Lauderdale); Holland & Knight, Rodolfo Sorondo, Jr., and Rebecca M. Plasencia, for appellant.

Foley & Lardner, Edmund T. Baxa, Jr., Natalia M. Salas, James A. McKee (Tallahassee) and Benjamin J. Grossman (Tallahassee), for appellee.

Before SUAREZ, EMAS and LOGUE, JJ.

PER CURIAM.

## ON APPELLANT'S MOTION FOR REHEARING AND/OR CLARIFICATION AND CORRECTION

We deny appellant's motion for rehearing, but grant its motion for clarification and correction, withdraw the previously-issued opinion, and substitute the following corrected opinion in its stead.

### INTRODUCTION

GLF Construction Corporation ("GLF"), a Florida corporation, appeals the trial court's denial of its motion to dismiss for forum non conveniens. We affirm.

Credinform International, S.A. ("Credinform"), a Bolivian insurance company, filed suit against GLF in Miami-Dade County Circuit Court for fraud, aiding and abetting fraud, negligent misrepresentation, and violation of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA").

GLF moved to dismiss the complaint for forum non conveniens, asserting that Italy was a more appropriate forum. GLF also contended that the allegations against GLF were, in reality, allegations against GLF's parent company, Grandi Lavori, an Italian corporation, arising out of a construction project in Bolivia, and that GLF (a Florida corporation) was sued (instead of Grandi Lavori) to enable the action to be filed in Florida.

### BACKGROUND

In 2007, the governments of Bolivia and Italy entered into an agreement by which the Italian government, through an agency called the Italian Cooperation,

agreed to partially fund the construction of a dam on the Misicuni River in Bolivia. The funding was contingent upon the award of the construction contract to a consortium headed by an Italian contracting company. Empresa Misicuni, a Bolivian government-owned company, was in charge of overseeing the Misicuni Dam Project.

In June 2008, Empresa Misicuni issued an invitation to bid on the Misicuni Dam Project, specifying that an Italian company must have a leadership position (51%) in the construction consortium. Several months later, Grandi Lavori, an Italian engineering and construction company, joined with a construction consortium, Consorcia Hidroelectrico Misicuni ("CHM"), together with several South American companies, for the purpose of bidding on the Misicuni Dam Project. Grandi Lavori has its principal place of business in Rome, but its subsidiary, GLF (the defendant below), is a Florida corporation. Francisco Senis, an employee of Grandi Lavori and the Vice President of GLF, resides in Florida, but has dual citizenship in Italy and America. In July 2008, Grandi Lavori's president, Alessandro Mazzi, executed a power of attorney in Rome, appointing Senis to represent Grandi Lavori related to its business and projects in South America.

On November 2008, Senis executed a power of attorney in the Bolivian embassy in Miami, in favor of Martin Rovira Rada ("Rovira"), a Bolivian resident,

authorizing Rovira to represent Grandi Lavori in the CHM consortium. Rovira later signed the CHM Organizational Agreement, in December 2008, which provides that Grandi Lavori has a fifty-one percent ownership interest in the CHM consortium. Rovira listed GLF's Miami address as the address for Grandi Lavori.

The CHM consortium was awarded the Misicuni Dam Project in January 2009. The successful bidder was required to provide Empresa Misicuni with an advance payment bond and a performance bond issued by a Bolivian insurance company. Rovira contacted Credinform to this purpose, and sent Credinform the necessary information, including the CHM Organizational Agreement, which, importantly, indicated that Grandi Lavori had a fifty-one percent ownership interest in the CHM consortium.

On March 30, 2009, Grandi Lavori's president executed a new power of attorney in Rome, authorizing Rovira to act on behalf of Grandi Lavori for purposes of CHM and the Misicuni Dam Project. Thereafter, Credinform issued the advance payment bond and the performance bond. Rovira signed both bonds, using mrovira@glfusa.com as his contact email.

Construction began on the Project, and in June 2009, CHM wire transferred $1,530,333 to GLF's Miami account. At some point during the construction, and for reasons not directly related to this appeal, it was determined that work on the Project should not continue. When the remaining members of the CHM

consortium refused to halt construction, Grandi Lavori suspended its participation in the Project, and funding of the Project was suspended. Empresa Misicuni terminated the construction contract in November 2013, and demanded that Credinform pay on the bonds, which it did, in the amount of nearly $15,000,000. Credinform then filed the instant action against GLF in Miami-Dade.

In its Amended Complaint (and in its response to GLF's motion to dismiss on forum non conveniens grounds), Credinform contended that GLF was formed to help Grandi Lavori with its business activities in the Americas, and that GLF provided Grandi Lavori with personnel and infrastructure support regarding Grandi Lavori's pursuit of the construction contract, the acquisition of the construction bonds and the monitoring of the Misicuni Dam Project.

Credinform alleged that Senis accepted the power of attorney from Grandi Lavori in the scope of his employment with GLF and that Senis' power of attorney to Rovira was made in furtherance of GLF's corporate purpose of assisting its parent company with its business in the Americas. Credinform also alleged that Rovira worked with Senis to obtain the bonds from Credinform in furtherance of GLF's purpose of assisting Grandi Lavori. Finally, the Amended Complaint alleged that agents or employees of GLF were part of a finance committee to monitor the Project and to approve expenses.

5

GLF renewed its motion to dismiss for forum non conveniens, incorporating its prior filings and submitting additional evidence. After a hearing, the trial court denied the motion to dismiss, finding that although Italy would be a proper alternative forum, the private factors weighed slightly in favor of Credinform's forum choice, and the public factors weighed in favor of Florida. This appeal followed.

**ANALYSIS:**

We review the trial court's denial of the motion to dismiss for forum non conveniens under an abuse of discretion standard. Ryder Sys., Inc. v. Davis, 997 So. 2d 1133 (Fla. 3d DCA 2008).

On appeal, GLF asserts that the trial court abused its discretion in determining that the private and public factors weigh in favor of Florida because it "failed to properly analyze" those factors. However our review of the record, including the transcript of the hearing, establishes that the trial court conducted a proper, adequate analysis, and we find no abuse of discretion in its determinations.

As set forth in Kinney System, Inc. v. Continental Insurance Co., 674 So. 2d 86 (Fla. 1996), Florida courts are required to consider four factors in analyzing whether a case should be dismissed on forum non conveniens grounds. The Kinney analysis is incorporated into Florida Rule of Civil Procedure 1.061(a),[1] which provides:

**(a) Grounds for Dismissal.** An action may be dismissed on the ground that a satisfactory remedy may be more conveniently sought in a jurisdiction other than Florida when:

(1) the trial court finds that an adequate alternate forum exists which possesses jurisdiction over the whole case, including all of the parties;

(2) the trial court finds that all relevant factors of private interest favor the alternate forum, weighing in the balance a strong presumption against disturbing plaintiffs' initial forum choice;

(3) if the balance of private interests is at or near equipoise, the court further finds that factors of public interest tip the balance in favor of trial in the alternate forum; and

(4) the trial judge ensures that plaintiffs can reinstate their suit in the alternate forum without undue inconvenience or prejudice.

The decision to grant or deny the motion for dismissal rests in the sound discretion of the trial court, subject to review for abuse of discretion.

In this case, it is undisputed that Italy is an adequate alternative forum, and because the trial court ultimately denied GLF's motion to dismiss, we are concerned here only with the second and third prongs of the above Kinney analysis.

---

[1] The court commentary to rule 1.061 notes: "This section was added to elaborate on Florida's adoption of the federal doctrine of forum non conveniens in Kinney System, Inc. v. Continental Insurance Co., 674 So. 2d 86 (Fla. 1996), and it should be interpreted in light of that opinion."

**Private Interests**

As to the private interests prong, GLF asserts that the trial court focused solely on Credinform's ability to prove its claims and ignored GLF's ability to prove its defenses. We do not agree. A review of the record establishes that the trial court considered both sides of the issue, and that it did not agree with GLF's contention that Italy was a better forum because most of the evidence necessary to establish GLF's defenses were located there. Further, we note that Credinform sued GLF in its home forum of Florida, and as we have noted in prior decisions, "a forum non conveniens argument coming from a party sued where [it] resides is both 'puzzling' and 'strange.'" Cardoso v. FPB Bank, 870 So. 2d 1247, 1250 (Fla. 3d DCA 2004) (quoting Sanwa Bank, Ltd. v. Kato, 734 So. 2d 557, 561 (Fla. 5th DCA 1999)). And as the Florida Supreme Court has noted in this regard: "Indeed, 'the fact that the defendants are located in this country,' and especially in this state, "is one indication that it would be less burdensome for the defendants to defend suit in this country than it would be for [the plaintiff] to litigate in a foreign country." Cortez v. Palace Resorts, Inc., 123 So. 3d 1085, 1097 (Fla. 2013) (quoting Lehman v. Humphrey Cayman, Ltd., 713 F.2d 339, 346 (8th Cir. 1983)).

GLF also contends that Credinform sued GLF only to enable the action to be brought in Florida, when in fact the "real" defendant should have been Grandi Lavori. However, a review of the well-pleaded allegations of the amended

8

complaint evidences that Credinform did assert factually-sufficient claims against GLF for GLF's own actions. The amended complaint alleges, inter alia, that:

● In order to bid on and qualify for the Misicuni Dam Project, there was a requirement that an Italian company (such as Grandi Lavori) must hold a leadership position (51%) in the construction consortium;

● Senis and Rovira, in the course and scope of their agency and/or employment with GLF, and for the purpose of assisting Grandi Lavori in its business in the Americas, represented to Credinform that Grandi Lavori was a majority participant in CHM construction consortium, to induce Credinform to issue construction bonds for the Project;

● Credinform, knowing Grandi Lavori was an "internationally known engineering and construction company," issued the bonds based on "[t]he technical expertise and the financial strength of Grandi Lavori," which had "completed construction of dozens of dams, hydroelectric plants and thermic-electrical power plants."

● Grandi Lavori never participated in the CHM consortium, but instead permitted the CHM consortium to use its name (thereby satisfying the required fifty-one percent participation of an Italian company) in exchange for a kickback, enabling CHM to secure the contract;

● GLF was aware of these "secret agreements" between Grandi Lavori and CHM when it represented to Credinform that Grandi

9

Lavori was participating in the CHM consortium and would be the technical lead on the Project;

● Ultimately, Credinform alleged, "[b]ut for GLF's representations regarding the nature and extent of Grandi Lavori's participation in CHM, Credinform would not have issued the construction bonds."

Thus, GLF's postulation regarding Credinform's reasons for suing GLF (instead of Grandi Lavori), at least at this juncture of the proceedings, does not overcome Credinform's choice of a Florida forum. Although Credinform may well have claims against Grandi Lavori for its failure to perform or complete the Project, the claims asserted in the action below are against GLF for alleged misrepresentations made by its employees or agents regarding Grandi Lavori's participation in CHM, which induced Credinform to issue the bonds.

While it is clear that this litigation will require production of evidence and witnesses from Italy to establish certain facts, including Grandi Lavori's true role in the consortium, it is equally clear that there will be evidence and witnesses in Bolivia, where the Project is located, and in Florida, where GLF is incorporated and located. The documents submitted by GLF, and the allegations of the complaint, establish that many emails and letters came from GLF in Florida and that money was deposited from CHM into GLF's Florida account. Florida law is clear that "[t]he presumption in favor of a plaintiff's choice of forum 'can be

defeated **only** if the relative disadvantages to the defendant's private interests are of sufficient weight to overcome the presumption.'" Publicidad Vepaco, C.A. v. Mezerhane, 176 So. 3d 273, 278 (Fla. 3d DCA 2015) (quoting Kinney, 674 So. 2d at 91). Even foreign plaintiffs are entitled to some deference in their choice of forum. Publicidad Vepaco, 176 So. 3d at 278. Thus, we find no abuse of discretion in the trial court's determination that the private interests tilt in favor of Florida or, at best, are in equipoise.

**Public Interests**

Turning to the public interest factors,[2] GLF asserts that the trial court failed to analyze these factors, instead simply concluding that the public interest favored Florida because GLF is a Florida corporation. However, the record fails to support this contention. Although the trial court did state, during the hearing, that "the public interest is affected by suing a defendant in Florida," in context, this comment refers to the fact that the public interest analysis, in a case involving a Florida defendant, requires consideration of the nature and extent of the connection of the litigation with Florida. "The public interest inquiry focuses on whether the litigation has a general nexus with the chosen forum 'sufficient to justify the

_____

[2] We disagree with Credinform's contention that it was not necessary for the trial court to analyze the public interest factors because it found the private interests did not favor dismissal. Florida law is clear that court must analyze the public interest factors where it finds the private interests are at or near equipoise, which was the case here. See Rolls-Royce, Inc. v. Garcia, 77 So. 3d 855 (Fla. 3d DCA 2012).

11

forum's commitment of judicial time and resources to it.'" Id. at 281 (quoting Cortez v. Palace Resorts, Inc., 123 So. 3d 1085, 1093 (Fla. 2013)).

Several significant connections with Florida are alleged in this case:

● Senis, employed by GLF (a Florida corporation), represented the interests of Grandi Lavori and the CHM through actions undertaken by him in Florida;

● The power of attorney, signed by Senis in Florida, authorized Rovira (a Bolivian citizen) to act on behalf of Grandi Lavori on the Project;

● A May 2009 letter from Senis to Credinform, in which Senis represented Grandi Lavori's interest in the Project, was sent from Miami;

● GLF received money from CHM at GLF's Florida bank account (although GLF does not dispute this, it does dispute whether this money was ultimately intended for GLF or Grandi Lavori);

●The core allegations of the Amended Complaint (GLF's misrepresentations to Credinform, which induced Credinform to issue the performance and payment bonds) arose in Florida, and the claims against GLF are governed by Florida law.

Three general public interest factors are at play: First, "courts may validly protect their dockets from cases which arise within their jurisdiction, but which

lack significant connection to it;" second, "courts may legitimately encourage trial of controversies in the localities in which they arise;" and third, "a court may validly consider its familiarity with governing law when deciding whether or not to retain jurisdiction over a case." Kinney, 674 So. 2d at 92. As applied to the instant case, we find no abuse of discretion in the trial court's determination that the public interest factors weigh in favor of a Florida forum.

## **CONCLUSION**

We hold that the trial court conducted a proper analysis pursuant to Kinney and rule 1.061(a), and did not abuse its discretion in denying GLF's motion to dismiss for forum non conveniens.

Affirmed.