Belle **BESTOR** and Stanley H. Bestor, Plaintiffs,

v.

**COSTA CROCIERE, S.P.A.,** Defendant.

Eleanor **Cohon** and Julian Cohon, Plaintiffs,

v.

Costa Crociere, S.P.A., Defendant.

Patricia **Esfeld** and Donald Esfeld, Plaintiffs,

v.

Costa Crociere, S.P.A., Defendant.

Nos. 991914Civ., 001661Civ., 001662Civ.

United States District Court, S.D. Florida.

Oct. 25, 2000.

Xavier Martinez, Michael Olin, Podhurst, Orseck, et al., Miami, FL, for plaintiff.

Stephanie Wylie, David Horr, Horr, Novak & Skipp, Miami, FL, for defendant.

**ORDER DISMISSING CASES WITHOUT PREJUDICE TO THEIR REFILING IN AN APPROPRIATE FORUM**

HIGHSMITH, District Judge.

THESE CAUSES are before the Court for review. The pending motions posit an interesting query: may this Court entertain a diversity action, when a Florida court has dismissed an identical prior state court action for forum non conveniens? As explained below, this Court's diversity jurisdiction will not sustain such an action. These cases must, therefore, be dismissed.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. The Underlying Accident

These personal injury actions arise from an automobile accident in Da Nang, Vietnam. Plaintiffs Belle and Stanley Bestor, Eleanor and Julian Cohon, and Patricia and Donald Esfeld (collectively "Plaintiffs") are three married couples, all of whom are United States citizens. The Bestors reside in the State of California, and the Cohons and the Esfelds reside in the State of Washington. In January of 1994, Plaintiffs were on a cruise of the Western Pacific. Defendant, an Italian corporation, owns and operates the ship on which Plaintiffs were traveling, the *Ocean Pearl*. Da Nang was one of the *Ocean Pearl*'s ports of call. On January 19, 1994, Plaintiffs arranged, through the *Ocean Pearl*'s staff, to take a guided van tour of the Da Nang area. During that tour, the driver lost control of the van, causing the vehicle to skid across the road, hit an embankment, and roll over into a roadside ditch. Plaintiffs all suffered severe injuries, which forced them to cut short their cruise and return home.

### B. The State Court Actions

The Bestors, the Cohons, and the Esfelds filed separate lawsuits against Defendant in the Circuit Court of the Eleventh Judicial Circuit, in and for Miami–Dade County, Florida, seeking redress for their injuries.[1] Defendant moved to dismiss the

---

1. In the state court actions, Plaintiffs joined as defendants several entities associated with

lawsuits for forum non conveniens. The trial judge denied Defendant's motions to dismiss.[2] Defendant appealed the denial of its motion to dismiss in the Bestors' case, but chose not immediately to appeal the denial in either the Cohons' case or the Esfelds' case. Florida's Third District Court of Appeal reversed the denial of the motion to dismiss for forum non conveniens in the Bestors' case. *See Pearl Cruises v. Bestor*, 678 So.2d 372 (Fla.App. 1996), *review denied*, 689 So.2d 1068 (Fla. 1997). Chief Judge Schwartz's opinion for the court was brief, and it is reproduced fully here:

> The plaintiffs-appellees are California citizens who, through their travel agent in Massachusetts, booked passage on an Italian liner for a Western Pacific cruise which began in Singapore. When the ship docked in Vietnam, they arranged with the vessel for an excursion ashore in a private vehicle. The car was involved in a traffic accident and they were injured. They sued the shipowner, an Italian corporation, and four foreign agents of the line in the Dade County circuit court and duly served process upon them. The defendants moved to dismiss the case without prejudice under the forum non conveniens doctrine. Although the defendants have consented to the jurisdiction of the courts of Italy, the home of the corporate shipowner, and waived reliance on any statute of limitations, the trial judge denied the motion. We reverse.
>
> On the basis of a mere recital of the operative facts, which involve no meaningful relationship to Florida whatever, the maintenance of this case involves the epitome of the abuse of our courts which the Supreme Court decision in *Kinney System, Inc. v. Continental Insurance Co.*, 674 So.2d 86 revised, 658 So.2d 991 (1995) has so salutarily forbidden. On the authority of that decision, we hold that the cause must be dismissed.

> We reject plaintiffs' claim that the alternative forum proposed by the defendants, Italy, is so inappropriate that its availability does not overcome the weight of the plaintiffs' choice of forum. It is obvious that because Florida's interests in this litigation are next to nonexistent, Italy's, which include the very substantial one of concern for its own domiciliaries, *see Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981); *Kinney*, 674 So.2d at 87–88 are substantially more significant than those of this state. When, as here, a "balancing" of both the *Kinney* private and public interests so clearly requires dismissal, it is necessary only that "an adequate alternate forum exists which possesses jurisdiction over the whole case." *See Kinney*, 674 So.2d at 94 (proposed Rule 1.061(a)(1)). Italy indubitably qualifies on that score. Finally, one may observe that if the plaintiffs find the Italian forum unattractive, they are free to bring suit in any other jurisdiction which will entertain it.

> Accordingly, the order below is reversed with directions to grant the motion to dismiss for forum non conveniens.

> Reversed.

*Id.* at 372–73 (footnotes omitted). The Bestors petitioned the Florida Supreme Court for review; but their petition was summarily denied without an opinion. *See* 689 So.2d 1068. Thus, the Florida courts are closed to the Bestors.

Given the appellate success in the Bestors' case, Defendant renewed its motions to dismiss for forum non conveniens in both the Cohons' case and the Esfelds' case. The trial court, however, again denied Defendant's motions. Defendant appealed the denials of its renewed motions. The Third District Court of Appeal consolidated the cases on appeal and reversed the trial court, holding that the forum non

---

Defendant, which have not been made parties to the instant actions.

**2.** At the trial level, the three state court actions were presided over by the Honorable Philip Bloom, Circuit Court Judge.

conveniens issue was controlled by its earlier decision in the Bestors' case. *See Pearl Cruises v. Cohon,* 728 So.2d 1226 (Fla.App.) (per curiam), *review denied,* 744 So.2d 453 (Fla.1999). The Florida Supreme Court subsequently denied, without opinion, the Cohons and Esfelds' petition for review. *See* 744 So.2d 453. Therefore, the doors to Florida's courts are also shut for the Cohons and the Esfelds.

### C. The Federal Actions

#### 1. The Bestors' Case (Case No. 99–1914–CIV)

After the Florida Supreme Court denied review of their case, the Bestors filed suit in this Court on July 8, 1999. The case was originally assigned to Judge Ursula Ungaro–Benages, who recused. The case was then randomly reassigned to Chief Judge Edward B. Davis. After being served, Defendant moved to dismiss the action. Defendant's primary argument was that the Bestors were collaterally estopped from bringing this action by the Third District Court of Appeal's decision that Italy, not Florida, was the appropriate forum for the action. Alternatively, Defendant argued that the case should be dismissed independently under the federal forum non conveniens doctrine. Defendant also challenged the legal sufficiency of the allegations made in the complaint.

By way of an order dated February 25, 2000, Judge Davis denied Defendant's motion to dismiss. Initially, Judge Davis concluded that the doctrine of collateral estoppel did not bar the action because the forum non conveniens issues presented in the two cases were not identical. Specifically, Judge Davis found that "the Third District focused its attention on the connection of the action, and its operative facts, to Florida," while "under federal law, district courts must focus their attention on the relevant action's connection to the United States as a whole, not just on the

action's connection with a specific state or jurisdiction." Case No. 99–1914–CIV Feb. 25, 2000 Order at 3. Judge Davis then went on to conduct, anew, the federal forum non conveniens analysis and determine that, based upon a weighing of the public and private interests, the case should not be dismissed for forum non conveniens. Finally, Judge Davis rejected Defendant's contention that the complaint failed to state a claim upon which relief could be granted.

On March 10, 2000, Defendant moved the Court to reconsider its denial of the motion to dismiss. Judge Davis denied the motion for reconsideration on March 31, 2000. Defendant then petitioned the Court for permission to take an interlocutory appeal of the order denying its motion to dismiss. That petition is currently pending. On June 15, 2000, the case was reassigned to the undersigned United States District Judge, due to Judge Davis' retirement from the bench.

#### 2. The Cohons' Case (Case No. 00–1661–CIV) and the Esfelds' Case (Case No. 00–1662–CIV)

On May 10, 2000, the Cohons and the Esfelds filed separate lawsuits in this Court. The Cohons' case was originally assigned to Judge Adalberto Jordan, and the Esfelds' case was originally assigned to Judge Alan S. Gold. Both cases have now been reassigned to the undersigned United States District Judge, in accordance with Local Rule 3.9(C), which directs that substantially similar cases are to be consolidated before the judge to whom the first filed case was assigned.[3]

Defendant has moved to dismiss both the Cohons' case and the Esfelds' case. As it did in the Bestors' case, Defendant argues that the cases should be dismissed (1) under the doctrine of collateral estoppel, (2) independently under the federal

---

**3.** The Esfelds' case was transferred from Judge Gold's docket to Judge Davis' docket prior to Judge Davis' retirement from the bench, and was then transferred, along with the Bestors' case, to the undersigned's docket when Judge Davis retired. The Cohons' case was transferred directly from Judge Jordan's docket to the undersigned's docket, following Judge Davis' retirement.

forum non conveniens standard, or (3) for failure to state claim upon which relief may be granted. Defendant also asserts that the cases should be dismissed for improper service of process. Finally, Defendant contends that these federal actions are barred by the *Rooker/Feldman* doctrine.[4] The Cohons and the Esfelds vigorously oppose the motions to dismiss, averring that the state court dismissals for forum non conveniens are irrelevant to whether or not these cases may be heard in this federal forum.

## II. DISCUSSION

The gravamen of Defendant's argument against this Court hearing these cases is that Plaintiffs should not be allowed to obtain a different result in this Court than they did in a state court located just a few blocks away. Initially, before Judge Davis, Defendant framed its argument as a matter of collateral estoppel. In its present form, Defendant's argument is additionally couched in terms of the *Rooker/Feldman* doctrine. These two asserted grounds are too narrowly focused, as neither of the preclusive doctrines specifically invoked is applicable because, pursuant to Judge Davis' ruling in his February 25, 2000 order, the Florida forum non conveniens analysis and the federal forum non conveniens analysis are distinct.[5] However, when considered in light of the limited grant of federal diversity jurisdiction, the prior determination of the forum non conveniens issue by the Florida courts does preclude this Court from hearing these actions, under the Rules of Decision Act, 28 U.S.C. § 1652, and the teachings of *Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938) and its progeny.

### A. *Erie* Principles

■ One of the defining elements of the American form of governance is its concomitant systems, state and federal, for the administration of justice. When the prerequisites for federal diversity jurisdiction are satisfied, *see* 28 U.S.C. § 1332, the two systems provide litigants with alternative fora located in the same state in which to bring suit. Since the Supreme Court's watershed *Erie* decision in 1938, it has been a tenet of federal jurisprudence that in diversity cases "[e]xcept in matters governed by the Federal Constitution or by acts of Congress, the law to be applied ... is the law of the State." 304 U.S. at 78, 58 S.Ct. 817.

This directive has both statutory and constitutional underpinnings. *See id.* at 77–78, 58 S.Ct. 817. The statutory basis is the Rules of Decision Act, which was originally enacted as part of the Judiciary Act of 1789 and provides: "The laws of the several states, except where the Constitution or treaties of the United States or Acts of Congress otherwise require or provide, shall be regarded as rules of decision in civil actions in the courts of the United States, in cases where they apply." 28 U.S.C. § 1652. Less clear is the precise constitutional ground for the decision, which Justice Brandeis' opinion alludes to but never specifically identifies. *See* Erwin Chemerinsky, *Federal Jurisdiction,* § 5.3, at 313 (3rd ed.1999) ("[t]he constitutional basis for the *Erie* decision has confounded scholars"). The constitutional undergirding, though, is best understood as the allocation of law making authority between state and federal envisioned by the Constitution, which limits federal authority to those spheres of influence enumerated in the Constitution. *See Hanna v. Plumer,* 380 U.S. 460, 474–75, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965) (Harlan, J., concurring); *see also* John Hart Ely, *The Irrepressible Myth of Erie,* 87 Harv. L.Rev. 693, 702–04 (1974). While the nuances of the decision's reasoning may be open to scholarly debate, it is beyond question that

---

4. *See District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983); *Rooker v. Fidelity Trust Co.,* 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923).

5. *See infra* Note 8 concerning the potential applicability of collateral estoppel.

the *Erie* doctrine generally mandates application of state law, including state common law, in diversity cases. *See* Erwin Chemerinsky, *Federal Jurisdiction,* § 5.3, at 314 (3rd ed.1999).

As any first year law student can attest, this principle is easier stated than applied. In *Guaranty Trust Co. v. York,* 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079 (1945), the Supreme Court eschewed, as too formalistic, strict adherence to the "procedure" federal law applies versus "substance" state law applies distinction. In its place, the Supreme Court embraced the "outcome determinative test," in an effort to comport with *Erie*'s intent that "in all cases where a federal court is exercising jurisdiction solely because of the diversity of citizenship of the parties, the outcome of the litigation in the federal court should be substantially the same, so far as legal rules determine the outcome of a litigation, as it would be if tried in a State court." *Id.* at 109, 65 S.Ct. 1464. Under this formulation, a state law that would "intimately affect recovery or non-recovery" must be given effect, regardless of "analytical or terminological niceties" such as procedure versus substance. *Id.* at 110, 65 S.Ct. 1464. Later the Supreme Court, recognizing that even the most ministerial matters of procedure could theoretically be outcome determinative, tempered its reliance upon the dispositive nature of a law. *See Hanna v. Plumer,* 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8.

■ Under the prevailing *Erie* jurisprudence, state law will be applied in a diversity action absent a contrary (1) valid federal statute or rule or (2) overriding federal interest. The most lucid explanation of the modern *Erie* analysis is provided by Professor Chemerinsky:

> [T]he current law can best be understood as involving a three question inquiry. If there is no conflict between state and federal law, both are to be applied. But if state and federal law are inconsistent, the following questions must be asked. First, is there a valid federal statute or Federal Rule of Procedure on point, such as a provision of the Federal Rules of Civil Procedure or Federal Rules of Appellate Procedure? If so, then the federal law is to be applied, even if there is conflicting state law. If there is not a valid statute or Rule of Procedure, the second question is whether the application of state law in question is likely to determine the outcome of the lawsuit. If the state law is not outcome determinative, then federal law is to be used. But if the state law is deemed to be outcome determinative, then the third question is asked: Is there an overriding federal interest justifying the application of federal law? If state law is outcome determinative and there is no countervailing federal interest, then state law controls. Otherwise, federal law applies. In applying this test, federal courts are to be guided by the goals of the *Erie* doctrine, which are to prevent forum shopping and the inequitable administration of justice.

Erwin Chemerinsky, *Federal Jurisdiction,* § 5.3, at 315 (3d ed.1999) (footnotes omitted). This three-tiered inquiry synthesizes (1) the need to give state law effect when the failure to do so would result in contrary state and federal outcomes and (2) the certainty that a uniform body of federal law will govern the process by which litigation is conducted in the federal courts.

### B. *Erie* and the Doctrine of Forum non Conveniens

The Supreme Court has expressly reserved on the question of whether under *Erie* state or federal law governs the forum non conveniens analysis. *See Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 249 n. 13, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981). A majority of the federal circuit courts of appeals to address the issue have concluded that the federal analysis should be applied. *See Ravelo Monegro v. Rosa,* 211 F.3d 509, 511 (9th Cir.2000) (collecting cases); *but see Weiss v. Routh,* 149 F.2d 193 (2d Cir.1945) (L.Hand, J.). Those decisions, though, have uniformly been de-

pendent upon a compelling federal interest not at issue in the instant case: the inherent power of federal district courts to control and manage their dockets.

Illustrative of this distinction is the Eleventh Circuit's decision in *Sibaja v. Dow Chem. Co.*, 757 F.2d 1215 (1985) (per curiam). There, fifty-eight Costa Rican agricultural workers brought a tort action against two pesticide manufacturers in a Florida court. *See id.* at 1216. The plaintiffs were all Costa Rican citizens, were injured in Costa Rica, and most of the evidence and witnesses were located in Costa Rica. *See id.* After the defendants removed the case, Judge King dismissed the action under the federal forum non conveniens doctrine. *See id.* Under the prevailing Florida law at the time, the action could not have been dismissed for forum non conveniens because the corporate defendants were registered to conduct business in the State of Florida.[6] *See id.* at 1217 & n. 3. On appeal, the plaintiffs argued that *Erie* required that Florida forum non conveniens law be applied and that, consequently, the action should be allowed to proceed in federal court.

The Eleventh Circuit rejected the plaintiffs' *Erie* argument. Initially, the Eleventh Circuit observed that a district court possesses inherent power "to control the administration of the litigation before it and to prevent its process from becoming an instrument of abuse, injustice and oppression." *Id.* at 1218. "The doctrine of forum non conveniens is but one manifestation of that inherent power." *Id.* The Eleventh Circuit then concluded that the "court's inherent power to protect the integrity of its process through forum non conveniens" and its "interest in controlling its crowded docket" provided a sufficient basis to warrant application of the federal forum non conveniens standard over Florida' open door policy. *See id.* at 1218–19. The Eleventh Circuit, however, emphasized that its holding that *Erie* did not require application of the state law forum

non conveniens analysis was limited to the particular circumstances of the case before it. *See id.* at 1219 ("*under the circumstances here*, whether to exercise its jurisdiction and decide the case was not a decision going to the character and result of the controversy") (emphasis supplied); *id.* ("the district court's application of the doctrine of forum non conveniens *in this case* did not operate as a state substantive rule of law and thus transgress *Erie*'s constitutional prohibition") (emphasis supplied).

The most thorough discussion of *Erie* and the forum non conveniens doctrine is found in Judge Hill's majority opinion and Judge Higginbotham's concurrence in the en banc Fifth Circuit decision in *In re Air Crash Disaster Near New Orleans, La.*, 821 F.2d 1147 (5th Cir.1987) (en banc), *vacated on other grounds sub nom., Pan American World Airways, Inc. v. Lopez*, 490 U.S. 1032, 109 S.Ct. 1928, 104 L.Ed.2d 400 (1989), and *reinstated in part*, 883 F.2d 17 (5th Cir.1989) (en banc). As the Eleventh Circuit was in *Sibaja*, the Fifth Circuit was presented with a diversity case where the applicable state law essentially did not recognize forum non conveniens. *See id.* at 1154–55 (discussing the lack of forum non conveniens under Louisiana law). Thus, the Court was forced to consider whether it should (a) not consider the issue of dismissal on forum non conveniens grounds, as Louisiana law dictated or (b) consider the issue under the federal standard. *See id.* at 1155 (noting the need to undertake "the difficult *Erie* question presented").

Judge Hill's majority opinion squarely acknowledged the competing interests at play. In his words: "The enormous difference between the outcomes of state and federal proceedings points forcefully toward applying state law under the [anti-forum shopping] aim of *Erie*. On the other hand, the interests of the federal courts in maintaining the federal doctrine even in a

---

6. Florida has dramatically curtailed the open door policy of its courts since *Sibaja* was decided. *See Kinney Sys. v. Continental Ins., Co.*, 674 So.2d 86 (Fla.1996).

diversity case are powerful." *Id.* at 1158. Judge Hill, quoting *Sibaja* extensively, then went on to describe the federal courts' interests in self-regulation. *See id.* at 1158–59. Having surveyed the incompatible interests implicated by the *Erie* question, Judge Hill candidly concluded:

> Thus we face a difficult *Erie*-doctrine choice. We must choose between maintaining important internal administrative and equitable powers of our courts at the cost of disuniformity of result between state and federal diversity courts, or uniformity at the cost of giving up part of our self-regulatory powers. It is fashionable to call a difficult choice between important objectives a "balancing" test, but we decline to resort to this metaphor. It is simply a matter of choice, and choose we must.
>
> We hold that the interests of the federal forum in self-regulation, in administrative independence, and in self-management are more important than the disruption of uniformity created by applying federal forum non conveniens in diversity cases.

*Id.* at 1159. Like the Eleventh Circuit in *Sibaja*, the Fifth Circuit, when faced with a diversity case in which the applicable state law did not recognize forum non conveniens, concluded that the inherent power of a court to control its docket trumped *Erie*'s mandate that state law apply in diversity cases.

Judge Higginbotham found the *Erie* question too close for him to take issue with the majority's ultimate decision that the federal forum non conveniens standard should be applied, but he wrote separately to express his disagreement with some of the reasoning of Judge Hill's opinion. *See id.* at 1180 (Higginbotham, J., concurring) ("The choice between a state or federal rule is in any event so close that I would silently join the majority if the rationale were not otherwise important."). In Judge Higginbotham's view, the majority misapplied *Erie* by giving too much weight to the interest of self-regulation and too little deference to a state policy established by law. *See id.* at 1183. Central

among his concerns was the majority's equating, for *Erie* purposes, judge-made law of administration and self-regulation to Federal Rules of Procedure enacted pursuant to the Rules Enabling Act, 28 U.S.C. § 2072. *See id.* at 1185. This, in Judge Higginbotham's mind, did not comport with the Rules of Decision Act and the teachings of *Erie. See id.* at 1185–86. He concluded, however, by conceding that the "efficiency concerns" embodied in the judge-made law of administration and self-regulation support applying the federal forum non conveniens analysis under *Erie. See id.* at 1186.

In both *Sibaja* and *In re Air Crash Disaster Near New Orleans, La.,* the courts faced diversity actions where the applicable state law did not offer a forum non conveniens vehicle for courts to police their dockets for overly burdensome foreign litigation. This created an obvious conflict between the state law to be applied and the inherent power of federal district courts to regulate their dockets. Without any means to dispose of cases for forum non conveniens, a federal district court would essentially become an open forum for disputes from around the globe between diverse parties. Presented with this untenable situation, both the *Sibaja* court and the *In re Air Crash Near New Orleans, La.* court found the interest of court self-regulation, or in judge Higginbotham's words "efficiency concerns," sufficiently compelling to overcome *Erie*'s presumptive applicability of state law.

The instant cases differ, however. Here, not only does the state law provide for forum non conveniens, but there have been prior determinations that Plaintiffs are barred under Florida forum non conveniens law from pursuing these actions because the actions lack any relationship to Florida. Thus, there is no conflict between the applicable state law and the Court's inherent power to regulate its docket, as there was in *Sibaja* and *In re Air Crash Near New Orleans, La.* Under

this circumstance, the Court must consider whether the Rules of Decision Act and *Erie* command that the state law determination of the forum non conveniens issue be given effect.

## C. *Erie*'s Application to the Instant Cases

■ *Erie* does not come into play unless state and federal law conflict. *See supra* Part II(A). Florida ostensibly applies the same forum non conveniens standard as federal courts.[7] *See Kinney Sys.*, 674 So.2d at 93 ("we are persuaded that the time has come for Florida to adopt the federal doctrine of forum non conveniens"). As pointed out by Judge Davis' February 25, 2000 order, however, there is a significant difference in application between the Florida and federal standards; i.e., the Florida analysis looks to the action's contacts with Florida and the federal analysis looks to the action's contacts with the United States.[8] In the present cases, this distinction results in a conflict between state and federal law, namely these actions are barred by forum non conveniens under Florida law while they are not under federal law.[9] Given this conflict, the Court must undertake the three-pronged *Erie* analysis. *See supra* Part II(A).

Under the *Erie* analysis, the first question is whether a valid federal statute or Federal Rule of Procedure controls the issue? As noted above, forum non conveniens is judge-made law; thus, there is no controlling federal statute or Federal Rule of Procedure. The next question asks whether the difference between state and federal law is outcome determinative? Forum non conveniens, though categorized as

an issue of venue, can significantly affect the substantive law to be applied in a case; therefore, as a practical matter the state law dismissals for forum non conveniens must be considered outcome determinative. *See In re Air Crash Disaster Near New Orleans, La.*, 821 F.2d at 1156 ("as a practical matter, only an outright dismissal with prejudice could be more 'outcome determinative' than a conditional dismissal to a distant forum in a foreign land"); *see also* Laurel E. Miller, Note, *Forum Non Conveniens and State Control of Foreign Plaintiff Access to U.S. Courts in International Tort Actions*, 58 U. Chi. L.Rev. 1369, 1389–90 (1991). Because the difference between state and federal law is outcome determinative, the Court must consider the final question: whether there is an overriding federal interest justifying the application of federal law over state law?

As discussed above, when federal courts have applied the federal forum non conveniens standard over state law forum non conveniens in diversity cases, the overriding federal interest justifying application of the federal standard has been the federal district courts' inherent power to control their dockets. *See Baumgart v. Fairchild Aircraft Corp.*, 981 F.2d 824, 828 (5th Cir.1993) (describing court's inherent power "to control the administration of litigation before it and to prevent its process from becoming an instrument of abuse, injustice, or oppression") (internal quotation marks and citation omitted); *In re Air Crash Disaster Near New Orleans, La.*, 821 F.2d at 1153–54 (same); *Sibaja*, 757 F.2d at 1218 (same). In the present

---

7. For *Erie* analysis, the Court looks to the forum non conveniens law of the state in which it sits—Florida. *See infra* Part II(D). The Florida Supreme Court articulated the current Florida forum non conveniens standard in *Kinney Sys.*, 674 So.2d 86, which the Third District Court of Appeal applied to bar Plaintiffs actions in state court.

8. The Court notes that this distinction is of consequence because of Judge Davis' reading and application of the Florida and federal forum non conveniens standards in his Febru-

ary 25, 2000 order. The Court considers Judge Davis' interpretation of the standards to be binding as the law of the case. If, however, the standards were construed to be indistinguishable, as was the intent of the Florida Supreme Court in adopting the "federal doctrine" in *Kinney Sys.*, these actions would clearly be barred by collateral estoppel.

9. The Court defers to Judge Davis' analysis of the federal forum non conveniens standard in his February 25, 2000 order.

case, that interest is not implicated because the Florida standard is more restrictive than the federal standard. When the state standard is more restrictive than the federal standard, rather than more liberal, the danger of the district court becoming a de facto open forum, under the guise of diversity jurisdiction, dissipates. Thus, under the unique circumstances presented here, there is no compelling federal interest of self-regulation, which would warrant application of the federal standard over the state standard.

Moreover, application of the federal standard would conflict with the dual aims of *Erie:* (1) the prevention of forum shopping and (2) the equitable administration of justice. As the Supreme Court has explained, these twin objectives dictate "that for purposes of diversity jurisdiction a federal court is in effect, only another court of the State." *Woods v. Interstate Realty Co.,* 337 U.S. 535, 538, 69 S.Ct. 1235, 93 L.Ed. 1524 (1949) (internal quotation marks omitted). District courts sitting in diversity should, therefore, apply the same restrictions on litigants and litigation as the courts of the state in which they sit. *See Arrowsmith v. United Press Int'l,* 320 F.2d 219, 226–27 (2d Cir.1963) (en banc) (Friendly, J.,). Otherwise, diversity defendants would be rendered "more readily suable in the federal court than they would be in the state court," which would result in widespread forum shopping and contrary results between the state and federal fora (i.e., inequitable administration of justice). *See id.* at 227. If federal courts were not to apply state law bars in diversity actions, state policy decisions concerning court access could readily be defeated simply by filing suit in federal court. *See Angel v. Bullington,* 330 U.S. 183, 191–92, 67 S.Ct. 657, 91 L.Ed. 832 (1947). Such a result is contrary to the purposes of diversity jurisdiction and runs afoul of *Erie. See id.* The concerns of

forum shopping and the equitable administration of justice, which are rooted in principles of federalism and comity, clearly further support the application of Florida forum non conveniens in the instant case.

Based upon the foregoing, it is evident that *Erie* dictates that Florida's law of forum non conveniens be applied in these cases.

**D. Plaintiffs Are not Foreclosed From Pursuing Their Actions in an Appropriate American Forum**

■ Throughout their responses to Defendant's motions, Plaintiffs intimate that the application of Florida's law of forum non conveniens to these cases would effectively close the American courts, federal and state, to them. This, Plaintiffs aver, would be far more of a draconian result than was intended by the Florida courts, which specifically left open the possibility that Plaintiffs could pursue these actions in their home states. *See Pearl Cruises v. Cohon,* 728 So.2d at 1228 ("The parties have not addressed whether the plaintiffs can refile in their home state of Washington, and nothing in this order prevents their doing so if the courts there will allow it."). Plaintiffs concerns are misplaced. Whether or not the courts of a particular state, federal or state, will entertain these actions must be determined by the forum non conveniens law of that state and, if litigated in federal court, an *Erie* analysis distinct from the one above.

■ For *Erie* purposes, federal district courts look to the state forum non conveniens law of the state in which they sit. *See, e.g., In re Air Crash Disaster Near New Orleans, La.,* 821 F.2d 1147 (Louisiana district court looks to Louisiana law); *Sibaja,* 757 F.2d 1215 (Florida district court looks to Florida law). Differences in state law may result in divergent outcomes for cases brought in federal district courts in different states.[10] Such differing re-

---

**10.** The forum non conveniens law of another state may well be more amenable to the litigation of foreign tort actions than the law of Florida. If that is the case, though, an *Erie* analysis would likely be significantly affected by the overriding federal interest of self-regulation, which would be implicated by a state standard that is more liberal than the federal standard.

sults, which are inevitable under *Erie,* are "attributable to our federal system, which leaves to a state, within the limits permitted by the Constitution, the right to pursue local policies diverging from those of its neighbors." *Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). The instant decision to give effect to Florida's law of forum non conveniens furthers *Erie's* "principle of uniformity [of law] within a state." *See id.* It does not, however, bear upon the appropriateness of Plaintiffs pursuing these actions in the courts of their home states.

## III. CONCLUSION

The forum non conveniens issue was fully litigated in the Florida courts. And the answer was unequivocal: these actions cannot be prosecuted in Florida. Plaintiffs have attempted to evade this result by invoking this Court's diversity jurisdiction. Under the present circumstances, there is no overriding federal interest supporting application of the federal standard over the state standard. The teachings of *Erie* and its progeny, therefore, direct that the Florida law of forum non conveniens be given effect. Accordingly, these cases are hereby DISMISSED without prejudice to their refiling in an appropriate forum (i.e., the courts of Italy, Vietnam, or Plaintiffs respective home states).

## *ORDER*

THESE CAUSES are before the Court upon Plaintiffs' motion (1) for amendment or clarification of order dismissing cases without prejudice to their refiling in an appropriate forum or (2) to transfer pursuant to 28 U.S.C. § 1404. The Court clarifies its order dismissing these cases as follows:

1. This Court dismissed these cases pursuant to the *Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938) doctrine, not for forum non conveniens.

2. Pursuant to the applicable Florida law, if Plaintiffs refile their cases in another forum within 120 days of the date that the instant dismissals become final (i.e., the date of this order), Defendant "shall be deemed to automatically stipulate that the action[s] will be treated in the new forum as though [they] had been filed in that forum on the date [they] were filed in Florida." Fla. R. Civ. P. 1.061(c)-(d).

3. The Court expresses no opinion as to whether any particular jurisdiction should or should not entertain these cases. *See Pearl Cruises v. Bestor,* 678 So.2d 372, 373 (Fla.App.1996) (observing that Plaintiffs are free to refile "suit in any other jurisdiction which will entertain it").

Plaintiffs' motion is DENIED in all other respects.