SHEPHERD, J.
This consolidated appeal involves the fate of five foreign seamen wishing to litigate their personal injury claims in Miami- *878 Dade County. We are confronted with a recurring question: whether Florida taxpayers via our state court system are required to provide a forum for the resolution of a personal injury claim by a foreign seaman who has had but a fleeting contact here and who is injured on a vessel far from our shores. We believe this question has been answered by the Florida Supreme Court in Kinney System, Inc. v. Continental Ins. Co., 674 So.2d 86 (Fla.1996). We find that the seamen’s individual litigation must be housed elsewhere, and direct them to seek relief in their own country, Italy or the Netherlands Antilles.
I. The Plaintiffs and their ties to South Florida
Every seaman represented in this consolidated appeal is a foreign seaman injured on a foreign ship while in foreign or international waters.
Oriel Tananta is a citizen and resident of Peru, who worked on the ship Costa Marina. He was an assistant waiter who injured himself in February 2000 while the ship was off the coast of Argentina. He received medical treatment in Argentina, and then in Peru.
Luis Vega is a citizen and resident of Columbia. He, too, worked on the Costa Marina. He was injured in September 1996 while the ship was off the coast of Italy. He fell off his bunk bed, injuring his shoulder. Vega’s roommates who witnessed the fall are of Honduran and Guatemalan descent. He filled out his accident form with the help of a Columbian friend. Vega received medical treatment by the ship’s doctor, an Italian national, and additional care in Italy.
Eleuterio Guzman Cruz is a citizen and resident of Honduras. He was a deck utility worker aboard the Costa Marina, who injured his arm pulling up cable lines. At the time of his injury in September 2000, the ship was cruising in international waters. Some of his complaints received attention from the ship’s doctors who were Italian and French nationals. He subsequently received medical care for his arm in Estonia, and then returned to Honduras for further treatment.
Fernando Simpson is a citizen and resident of Costa Rica, who worked on the ship Costa Allegra. He was a galley worker who fell while trying to clean a large oven. His only eyewitness was a Honduran shipmate. He was injured in November 1998 while the ship was in transit from the Netherlands to Brazil. Following the accident, he left the ship and received medical treatment in Brazil. He then returned home to Costa Rica for further medical care.
Rene Chamo is a citizen and resident of Guatemala, who worked as a linen valet aboard the ship Costa Classica. He was injured lifting a mattress in September 1996 while the ship was sailing off of the Italian coast. He received care from the ship’s doctor, an Italian national, and then at a shore-side facility in Italy. He also returned home to Guatemala to receive further medical attention.
Each of these claimants has few, if any, ties to Florida. It appears that the seamen came through Miami during their pre-employment medical screening, and executed them employment contract here, as opposed to in each of their respective homelands. Additionally, certain claimants received medical care in Miami, but the record suggests this was only in conjunction with or after each had retained or consulted with counsel here.
II. The Defendants and their ties to Florida
While some Costa vessels do on occasion enter the United States, the bulk (85%) of *879 Costa’s business comes from overseas. The Costa Classica (on which Chamo was injured) is a Liberian-flagged vessel that does not regularly call on U.S. ports, and at no point during Chamos employment aboard the ship did the vessel call at a U.S. port. Indeed, there is no record evidence that the ship has ever been in a U.S. port. The Costa Marina (on which Tanan-ta, Cruz and Vega were injured) was a Liberian-flagged vessel; it has, however, subsequently been re-flagged under the laws of Italy. It continues to cruise between European ports in the summertime and between South American ports in the wintertime. Similarly, there is no record evidence that either the Costa Marina, or the Costa Allegra (Simpson’s assigned ship) called on U.S. ports.
In the same vein, the corporate entities behind these vessels have equally sparse connections to the United States, and especially to Florida. The Costa Marina, Costa Allegro^ and Costa Classica are owned by an Italian corporation, Costa Crociere S.p.A., which has no offices or employees in Florida, and conducts its day-to-day business from its 450-employee office in Genoa, Italy.[1] Costa Crociere, S.p.A. markets its Costa cruises in the United States through its North American general sales agent, Costa Cruise Lines, N.V., which is a registered Netherlands Antilles corporation with offices located in Hollywood, Florida. Costa Cruise Lines, N.V. is one of eight marketing companies worldwide, and its territory is not limited to the United States, but also includes Venezuela, Canada, Mexico, Costa Rica, Honduras, Nicaragua, Panama and the Caribbean.
Prestige Cruises N.V. is the bareboat charterer (owner pro hac vice) of these vessels, and has a registered office in Curacao, Netherlands Antilles. It contracts with a subsidiary Prestige Cruise Management S.A.M. to perform the actual shipboard management of the hotel and catering functions. Neither entity has any employees or offices in the United States.
Cruise Ships Catering and Services International N.V. (hereafter “CSCS”), is also a Netherlands Antilles corporation that purports to have its principal place of business in Curacao, Netherlands Antilles. CSCS was responsible for hiring and placing each of the claimants aboard one of the ships. CSCS contracts with various independent contractors in Monaco with regard to the accounting and personnel related aspects of these vessels, and similarly contracts in large part with a Hollywood, Florida company' — -International Risk Services, Inc. (hereafter “IRSI”) — to administer medical benefits and claims for its unlicensed crew member-employees.[2]
*880 III.. The Propriety of Applying Doctrine of Forum Non Conveniens and our precedent in Cruise Ships Catering and Services Int’l v. Ta-nanta, 823 So.2d 258 (Fla. 3d DCA 2002).
Despite their tenuous connection to our shores, each of the foreign seamen filed an action in Miami-Dade County seeking damages for Jones Act negligence, unseaworthiness, and maintenance and cure. The first of these cases that percolated to this court on appeal was that of Peruvian Oriel Tananta. See Cruise Ships Catering and Servs. Int’l v. Tananta, 823 So.2d 258 (Fla. 3d DCA 2002). In that case, we applied Kinney to hold that the Peruvian seaman’s personal injury case required dismissal under the doctrine of forum non conveniens.
The four other seamen whose cases followed Tananta have suggested that our decision in Tananta was erroneous. They ask that we suspend the natural working of Tananta on the grounds that we were misled about the corporate existence of the defendant CSCS in that litigation.
We have carefully reviewed the allegations of falsity made and the record supporting them, including affidavits,[3] and find that the defendants-appellees (the same ones in Tananta as here) may have been coy about the extent to which CSCS actually does business in the Netherlands Antilles. It also appears that officers of CSCS and officers of IRSI shared some responsibilities, and that CSCS, through IRSI, has some distant connection with Florida. Nevertheless, we believe each of these seamen should have had their individual cases dismissed. Our decision in Tananta rested on the principles set forth in Kinney, and was not bottomed on the less than candid affidavits supplied by CSCS.
It is apparent to us that CSCS is one in a structured maze of foreign corporations through which Costa Crociere does business. Indeed, we are free to order our private world as we see fit.[4] However, *881 CSCS not having a substantive operation in Curacao by no means makes Miami the central hub where these kind of crewmen suits should be tried. Appellants’ highlighting of CSCS’ apparently greater than thought relationship to this state only inures to make the exercise of jurisdiction more proper than not. Such perorating is pointless, however, when the case is dismissed for practical reasons of inconvenience, which is a very different consideration than a jurisdictional one.
For the purposes of this appeal, even assuming that CSCS’ corporate existence is fluid, and granting plaintiffs-appellants’ allegation that CSCS has globally outsourced all of its prior responsibilities to the Hollywood based IRSI and the Monaco companies, that still does not upset our reasoning and decision in Tananta. The underlying consideration for these other seamen, as was the case in Tananta, is the doctrine of forum non conveniens, not lack of jurisdiction. As Kinney spells out, “[florum non conveniens is a common law doctrine addressing the problem that arises when a local court technically has jurisdiction over a suit but the cause of action may be fairly and more conveniently litigated elsewhere.” Kinney, 674 So.2d at 87 (footnote omitted). Thus, all of the extraneous controversy surrounding whether CSCS is a shell corporation in Curacao, or whether CSCS does business in Florida, is subsumed in a forum non conveniens analysis. “[I]t now is immaterial how ‘corporate residency’ is determined, because a corporation’s various connections with Florida—if any—will only be factors to be weighed in the balance of conveniences.” Id. at 93.
IY. The State of Florida has the right to direct whether to apply its own state law procedures in determining the venue of foreign seaman cases as opposed to federal standards.
In the case sub judice, it has been urged that this court apply the federal common law venue rule in admiralty cases. The body of federal law on venue requires that a court first decide under choice of law principles[5] whether the law of the United States should be applied, and if United States law applies, the case should not be dismissed for forum non conveniens. If the court determines United States law does not apply, then the traditional considerations of forum non conveniens are examined to determine whether the court should exercise its discretion to decline to assert jurisdiction over the case. Szumlicz v. Norwegian Am. Line, Inc., 698 F.2d 1192 (11th Cir.1988). However, the federal choice of law test to determine whether the forum non conveniens doctrine applies is required only of federal district courts. 46 U.S.C.App. § 688(a) (“Jurisdiction in such actions shall be under the court of the district in which the defendant employer resides or in which his principal office is located.”). The test does not necessarily apply to state courts. American Dredging Co. v. Miller, 510 U.S. 443, 457, 114 S.Ct. 981, 127 L.Ed.2d 285 (1993).
In American Dredging, the United States Supreme Court explicitly held that “venue under the Jones Act is a matter of *882 judicial housekeeping that has been prescribed only for the federal courts.” Id. The Court noted that the use of the word “district” in § 688(a) was strong evidence that Congress intended it to apply only to cases in federal court. Bainbridge v. Merchants & Miners’ Transp. Co., 287 U.S. 278, 280, 53 S.Ct. 159, 77 L.Ed. 302 (1932). Therefore, “|j']ust as state courts, in deciding admiralty cases, are not bound by the venue requirements set forth for federal courts in the United States Code, so also they are not bound by the federal common-law venue rule (so to speak) of .forum non conveniens.” American Dredging, 510 U.S. at 453, 114 S.Ct. 981 (italics omitted). Because both venue and forum non conveniens are procedural issues, rather than substantive, they can be left to the states to govern. Id. at 454 n. 4, 456-57, 114 S.Ct. 981 (harmonization not required because the doctrine of forum non conve-niens was not a characteristic feature of admiralty per se).
As such, for our purposes we need only see if the Florida Supreme Court has prescribed a standard different than the federal one, and if so, that is what controls. We believe this question was answered in 1996 when the Florida Supreme Court unleashed Kinney. Prior to Kinney, there may have been a predilection in our decisions to follow the federal standard for venue. See Rojas v. Kloster Cruise, 550 So.2d 59 (Fla. 3d DCA 1989) (applying federal inquiry to question of propriety of exercising jurisdiction on defendants whose ship operated exclusively out of Miami). After 1996, this Court necessarily and naturally gave precedence to Kinney over the previously applied federal standard. Guerra v. Selsdon Mar. Corp., 711 So.2d 1298 (Fla. 3d DCA 1998) (holding the lower court did not abuse its discretion in finding dismissal appropriate under doctrine of forum non conveniens), citing Kinney, 674 So.2d at 86. However, our recent decision in Henry v. Windjammer Barefoot Cruises, 851 So.2d 731 (Fla. 3d DCA 2003) has cast some confusion in the admiralty bar.
In Henry, a panel of this court summarily applied the federal choice of law standard on venue, relying on Fantome, S.A. v. Frederick, 2003 WL 23009844 (11th Cir. Jan.24, 2003). In that case, the panel held that the lower court should not have dismissed the matter, but should have exercised “jurisdiction.” Because “jurisdiction” was the only issue raised, the Henry panel concluded that the lower court should have exercised jurisdiction over a cruise ship whose base of operations was Miami Beach. The appellate review in Henry did not concern the doctrine of forum non conveniens, but was centered only on the issue of jurisdiction, which precipitated the headlong dive into an inquiry of the federal jurisdictional standard. In so doing, we believe that the panel too readily took refuge in the Eleventh Circuit Court of Appeal’s reasoning and analysis in Fantome, and did not sufficiently appreciate its forum constricted applicability. By this opinion, we now recede from Henry and clarify that it is Kinney and the standards articulated by the highest state court in Florida that control this type of foreign seamen’s suits brought up on forum non conveniens grounds. “What [has been] prescribed for the federal courts with regard to forum non conveniens is not applicable to the States.” American Dredging, 510 U.S. at 457, 114 S.Ct. 981. Though Fantome is well reasoned, it is applicable to seamen’s suits brought in federal court. The Florida Supreme Court has articulated a different standard by which we are to weigh foreign seamen suits lodged in our state courts, especially where the issue raised for dismissal is the doctrine of forum non conveniens as opposed to lack of jurisdiction. Kinney, 674 *883 So.2d at 88 (“if Florida applies a less vigorous doctrine of forum non conveniens, the state actually is disadvantaging some of its own residents — a result clearly not intended”).[6]
In Kinney, the Florida Supreme Court adopted the federal doctrine of forum non conveniens as outlined in Pain v. United Tech. Corp., 637 F.2d 775 (D.C.Cir.1980), cert. denied, 454 U.S. 1128, 102 S.Ct. 980, 71 L.Ed.2d 116 (1981). However, it is also equally clear that because of its heavy reliance on Pain, the Florida Supreme Court declined to adopt the federal choice of law venue analysis that precedes and predetermines whether to apply the federal forum non conveniens considerations. Pain involved a question of the acceptance of jurisdiction of the federal Death on the High Seas Act. Id. at 781 (“we reject appellants’ assertion regarding mandatory jurisdiction”). The seamen’s cases here involve the assertion of jurisdiction under the federal Jones Act. The Pain court “assume[d that] the district court had proper jurisdiction over” the consolidated case, leaving “only [the question of] whether the lower court properly renounced that jurisdiction by invoking the doctrine of forum non conveniens.” Id. Accordingly, it follows that the Florida Supreme Court in adopting Pain does not require lower courts to engage in a threshold choice of law inquiry, but allows them to proceed directly to the traditional considerations of forum non conveniens, assuming that jurisdiction was proper.[7]
This conclusion is easily gleaned because the very first sentence of Kinney frames the issue as
[whether] a trial court [is] precluded from dismissing an action on the basis of forum non conveniens where one of the parties is a foreign corporation that
(a) is doing business in Florida?
(b) is registered to do business in Florida?
(c) has its principal place of business in Florida?
Kinney, 674 So.2d at 87. Thus, Kinney, like Pain, assumes jurisdiction to be prop *884 er and asks courts to view the application of forum non conveniens as “a common law doctrine addressing the problem that arises when a local court technically has jurisdiction over a suit but the cause of action may be fairly and more conveniently litigated elsewhere.” Id.
The reasoning and ultimate holding of Kinney obviates all of the cries of foul play here. Even if CSCS were doing business in Florida, which has not been proven here,[8] this would not be controlling or dis-positive since it would only weigh in favor of exercising jurisdiction, and would be but one factor to consider in whether the case may be fairly and more conveniently litigated elsewhere so that the ends of justice are better served.
V. The standards adopted by the Florida Supreme Court in Kinney System, Inc. v. Continental Ins. Co., 674 So.2d 86 (Fla.1996) govern.
In Kinney, the Florida Supreme Court held that a trial court presented with a motion to dismiss on the basis of forum non conveniens can go directly (meaning, without engaging in any federal venue-choice of law qualifying test), to a four-step analysis:
[1] As a prerequisite, the court must establish whether an adequate alternative forum exists which possesses jurisdiction over the whole case.
[2] Next, the trial judge must consider all relevant factors of private interest, weighing in the balance a strong presumption against disturbing plaintiffs initial forum choice.
[3] If the trial judge finds this balance of private interests is at or near equipoise, he must then determine whether or not factors of public interest tip the balance in favor of a trial in [another] forum.
[4] If he decides that the balance favors such a forum, the trial judge must finally ensure that plaintiff can reinstate suit in the alternative forum without undue inconvenience or prejudice.
Kinney, 674 So.2d at 90, citing Pain v. United Tech. Corp., 637 F.2d 775 (D.C.Cir.1980), cert. denied, 454 U.S. 1128, 102 S.Ct. 980, 71 L.Ed.2d 116 (1981).

(A). Alternative Adequate Fora

In each of these cases, the respective homeland of the foreign seaman is an adequate alternate forum. Guatemala, Peru, Colombia, Costa Rica, and Honduras have each been found to be a satisfactory venue for personal injury causes of action. Delgado v. Shell Oil Co., 890 F.Supp. 1324 (S.D.Tex.1995) (products liability plaintiffs had adequate remedy in Guatemala, Costa Rica and Honduras); Flores v. Southern Peru Copper Corp., 343 F.3d 140 (2d Cir.2003) (Peru adequate forum); Iragorri v. Int’l. Elevator, Inc., 203 F.3d 8 (1st Cir.2000) (Colombia adequate alternative forum). Additionally, as a safeguard, the seamen’s cases were dismissed on a conditional basis to assure that the alternate *885 forum indeed did accept jurisdiction over the whole case.
More importantly, defendant-appellees through affidavit[9] have waived time limitation and jurisdictional defenses to the claimant’s re-filing in either Guatemala, Peru, Colombia, Costa Rica, Honduras, Italy or Netherlands Antilles. As was the case in Tananta, CSCS here also “affirm[s] that [it is] amenable to process in either jurisdiction.” Tananta, 823 So.2d at 259. In Kinney, the Florida Supreme Court opined that the “first step” of determining adequate fora is “satisfied when the defendant is ‘amenable to process’ in the other jurisdiction.” Kinney, 674 So.2d at 90; see also Aerolineas Argentinas, S.A. v. Gimenez, 807 So.2d 111, 113 (Fla. 3d DCA 2002). Because the defendants have stipulated to jurisdiction before a tribunal of competent jurisdiction in these other countries or the Netherlands Antilles for resolution of the claim, we find that CSCS has met its burden under the first prong of Kinney.
Additionally, the defendants have also submitted an affidavit of a Dutch lawyer stating that a Netherlands Antilles court will exercise jurisdiction based on its corporate filings there, and that these claimants can find suitable contingency-based legal representation there. Though CSCS’ existence in Curacao is gossamer thin,[10] not one of the plaintiffs has disputed why either the Netherlands Antilles or their respective homelands would not entertain their claims, or why they could not pursue remedies there. In fact, considering that every seaman has now'returned to reside in his homeland, we imagine that it would be more convenient for each of the injured claimants to fight the matter in his own back yard. Kinney, 674 So.2d at 90 (“There is a local interest in having localized controversies decided at home”). Lastly, since the mothership is in Italy, and defendants-appellees have submitted affidavits that it would consent to litigation there, the plaintiffs-appellants have yet to show why Italy would be unsuitable.
In the underlying consolidated case, as well as in other “forum non” cases where a transfer outside the United States has been requested, we have observed reluctance among lower court judges to release cases to lesser-developed countries. We find that the hesitancy is produced by the perception that our courts dispense justice better. A spirit of American paternalism should not guide whether we find these countries are adequate alternatives. Id. (alternative fora inadequate only when shown that the ‘.‘remedy available ... clearly amounts to no remedy at all”), citing Piper Aircraft Co. v. Reyno, 454 U.S. 235, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981) (substantive law of alternate forum being less favorable to plaintiff is insufficient to defeat a dismissal based on forum non conveniens). Similarly, we should not re *886 tain cases to punish movants for their belief that a foreign jurisdiction may exercise more sobriety and deal more evenhandedly. Kinney, 674 So.2d at 91 (“Of special note, the Pain Court found it irrelevant that the moving party apparently was motivated by a belief that the final award in the alternative forum was likely to be less costly”), citing Pain, 637 F.2d at 794-95.

(B). and (C). Private-Public Interests

Doing the private interest-public interest balancing of Tunanta, there is no “private interest” in Miami by the mere allegation that it was the situs of employment contract signing. In a sense, the situs of the signing of a contract is fortuitous, only one factor to be considered, and “is entitled to little weight because a seaman takes his employment, like his fun, where he finds it.” Lauritzen v. Larsen, 345 U.S. 571, 588, 73 S.Ct. 921, 97 L.Ed. 1254 (1953).
The seamen also point to Cos-ta’s Florida marketing operations as a private interest factor justifying the retention of the matter in South Florida. Generally, “[t]he presence in Florida of corporate subsidiaries whose conduct is unrelated to the claim is [simply] not relevant.” Membreno v. Costa Crociere, S.p.A., 347 F.Supp.2d 1289, 1297 (S.D.Fla. 2004), citing Calvo v. Sol Melia, S.A., 761 So.2d 461, 464 (Fla. 3d DCA 2000). For that reason, we find inconsequential the dissent’s weight placed on Costa Cruise Lines, N.V.’s Miami office containing 70-100 employees, because a marketing arm for passengers has nothing whatsoever to do with personal injuries suffered by a crewmem-ber. See dissent at 895, fn.18. Moreover, we find that Costa can and indeed should market to any citizens of any country, as well as profit from passengers from any country, without same necessarily being considered a mark of establishment in that country. “The mere fact that a bulk of a company’s profits comes from U.S. pockets is insufficient” to be private interest justifying Florida as a forum. Bautista v. CSCS Int’l, N.V., 350 F.Supp.2d 987, 990 (S.D.Fla. 2003) (Order dismissing on forum non conveniens). “In today’s climate of worldwide economics and the internet, there are few companies that have no connection with the United States. However, such a connection alone is insufficient to justify the United States’ becoming the Court for all tort disputes in the world. [Often,] the [only] connection to the United States is the law practice of Plaintiffs attorneys.” Id., at 991.
Lastly, the fact that their medical claims file can be located at IRSI in Hollywood, Florida is similarly insufficient. First, “IRSI ... is merely a consultant company that contracts with Costa to provide claim handling services for Costa’s non-European employees.... A copy of a crew member’s file is sent to IRSI only if that employee makes a medical claim.” Membreno v. Costa Crociere, S.p.A., 347 F.Supp.2d 1289, 1297 (S.D.Fla. 2004). Second, the medical claims file is essentially an administrative document, much like ones kept by a medical insurance company, a secondary, derivative source with only secondary, derivative relevance. The defendants’ connections because of IRSI’s presence are too “ancillary” to be considered a private interest in favor of Florida. Id.
While the seamen have not pushed this issue as much, the dissent does appear to focus greatly on Carnival’s “100% ownership] of Costa Crociere.” See dissent at 896. We do not find this to be a significant private interest factor in favor of Florida, and tend to agree with the federal court’s conclusion in Membreno finding *887 that “[w]hile Carnival certainly has its base of operations in the United States, the evidence presented supports that Carnival does not control Costa’s day-to-day operations .... [especially in light of the] maintenance of corporate formalities.” Membreno v. Costa Crociere, S.p.A., 347 F.Supp.2d 1289, 1294-95 (S.D.Fla. 2004). Therefore, “Carnival’s ownership of Cos-ta’s stock does not impact the forum non conveniens analysis.” Id.
Other than these few allegations,[11] these seamen have no other connection to Miami. They have not articulated what relevant evidence, if any, could be found here regarding their respective injuries. See La Reunion Francaise v. La Costena, 818 So.2d 657, 660 (Fla. 3d DCA 2002) (dismissed when “[n]o relevant evidence [was] located in Florida [and] plaintiff was unable to list even one Florida witness”).[12] Thus, each claimant’s initial choice of forum to litigate in Miami has to be called into question, and the “strong presumption favoring the plaintiffs choice of forum” has been toppled. Kinney, 674 So.2d at 91; Piper Aircraft, 454 U.S. at 256, 102 S.Ct. 252 (“plaintiff is unable to offer any specific reasons of convenience supporting his choice”).
With regard to the private interest balancing, under Tananta and Kinney, courts are also required to take into account practical concerns, such as adequate access to evidence and relevant sites, adequate access to witnesses, adequate enforcement of judgments, and the practicalities and expenses associated with litigation. Id. In this case, the accident scene was either on the high seas, the Mediterranean, or the Argentinean coastline. These ships do not call on U.S. ports and thus, crew witnesses would all have to be flown in, as well as doctors from Italy, Honduras, Estonia, Costa Rica, Peru, Argentina, Brazil and Guatemala. Each seaman’s own family members from each of the five South American countries would likewise have to be flown in to comment on their respective recoveries. The situation with these claimants is wholly different from cases where we have held Miami is an appropriate forum. See Celebrity Cruises, Inc. v. Hitosis, 785 So.2d 521 (Fla. 3d DCA 2000) (allowing Miami-Dade to be the forum because the Defendant companies were actually headquartered in Miami and the injured plaintiff actually received medical treatment in Miami). In sum, the fulcrum on private interests is not in equipoise, but in fact tips the scale in favor of the defendants-appellees to warrant dismissal.
The public interest factors bear on questions of administrative difficulties flowing from court congestion, local interest in deciding localized controversies, the avoidance of unnecessary problems in conflict of laws, and the unfairness of burdening citizens in an unrelated forum with jury duty. Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 509, 67 S.Ct. 839, 91 L.Ed. 1055 (1947). These four claimants are like their predecessor Tananta, and we fail to see what interest the State of Florida may *888 have in a Guatemalan national, injured aboard a Liberian-flagged vessel somewhere in the Mediterranean, who was treated by Italian and Guatemalan physicians, or for that matter, what interest we would have in a Columbian, Costa Rican or Honduran national, injured on the high seas aboard non-U.S. vessels, treated by foreign doctors, with only foreign witnesses of their incident to proffer. See Tananta, 823 So.2d at 259 (“Florida has no interest in an accident which occurred on board a ship off the coast of Argentina to a Peruvian citizen while he was working for a foreign corporation on a ship owned and operated by foreign corporations”); see also Pearl Cruises v. Bestor, 678 So.2d 372 (Fla. 3d DCA 1996) (dismissing suit filed in Miami by California citizens who booked through Massachusetts travel agent on an Italian liner for a Western Pacific cruise beginning in Singapore, and sustaining injuries in a traffic accident in Vietnam). The heart of Kinney was to allow the state judiciary in Florida to use the doctrine of forum non conveniens to “serve[ ] as a brake on the tendency of some plaintiffs to shop for the “best” jurisdiction in which to bring a suit — a concern of special importance in the international context [where there is] a growing trend ... to file suit in an American state even for injuries or breaches that occurred on foreign soil.” Kinney, 674 So.2d at 87-88. Because the trend to file in Florida had reached “abusive levels,” the Florida Supreme Court promulgated Rule 1.061 Forum Non Con-veniens. Id. at 94 (See appendix). The lower state courts in Florida should take heed and act in accordance.
The public interests in this case dictate that our taxpayers should not be billed for a case which occurred in foreign waters to a non-U.S. plaintiff working for a foreign cruise ship that merely had a local employee benefits administrator. It is entirely unreasonable to request our courts to commit our judicial resources and time to a case of this type.

(D). No undue inconvenience or prejudice

This last level of analysis ensures that “the remedy potentially available in the alternative forum does not become illusory” because a plaintiff is prejudiced by re-filing. Id. In this case, the defendants-appellees have stipulated that they waive any statute of limitations defenses for the purposes of being sued in Guatemala, Costa Rica, Honduras, Colombia or the Netherlands, and that it will accept service of process. Clearly, there is no inconvenience to Chamo, Vega, Simpson, and Cruz if they each sue on their home turf.
VI. Conclusion
To the extent that these four factors were correctly considered by the trial courts to dismiss each of these cases, we find that their respective decisions were well within the bounds of sound discretion. To the extent that these four factors were considered to retain the seamen’s cases, we find that the lower courts abused their discretion. “Nothing in our law establishes a policy that Florida must be a courthouse for the world, nor that the taxpayers of the state must pay to resolve disputes utterly unconnected with this states interest.” Id. at 88. While “the Florida Constitution guarantees ... access to our courts for redress of injuries, [citation omitted] that right has never been understood as a limitless warrant to bring the worlds litigation here.” Id. at 92. The judiciary of this State cannot serve as a band-aid to the world. These foreign seamen are free to re-file in their native countries or the Netherlands Antilles or even in Italy, but they are not free to misuse or abuse our court system.
*889 Dismissal of each seaman’s case is ordered.
LEVY, GERSTEN, GREEN, FLETCHER, and WELLS, JJ., concur.

. In September 2000, Carnival Corporation completed purchasing the stock of Costa Cro-ciere. Since that time, "through an intermediary Italian holding company, Costa has been a fully owned subsidiary of Carnival Corporation, [which itself is] a Panamanian corporation with its principal place of business in Miami, Florida.” Membreno v. Costa Crociere, S.p.A., 347 F.Supp.2d 1289, 1291 (S.D.Fla.2004). However, Carnival does not own, operate, charter or maintain the vessels involved here, nor did it employ or supervise the plaintiffs. As the Membreno court noted, Costa Crociere’s "contacts with Carnival are arms-length transactions that are necessitated by the separate corporate structures.” Id.

. Until mid-1999 C.S.C.S. Caribbean N.V., another Netherlands Antilles corporation with an office in Miami did recruiting for CSCS and, in fact, recruited the claimants here for employment aboard the Costa ships. Prior to being put into liquidation in that year, C.S.C.S. Caribbean N.V. was also responsible for employee medical care, and providing maintenance and cure. These third-party medical claims administrative duties were transferred to IRSI in June 1999. At or about the same time, the manning function was *880 transferred to a Monaco company called Cruise Ships Catering Services Management S.A.M.

. The affiants for CSCS, Laurence Klutz and Alberto Sacconaghi, have sworn that Curacao, Netherlands Antilles is CSCS' principal place of business, when in reality, CSCS is registered there and no employees physically exist at their shell office space. While CSCS' statement is somewhat disingenuous, litigant misconduct can be policed through Fla. Stat. § 57.105 (2003)and Fla. R.App. P. 9.410, with sanctions imposed if appropriate. On the other hand, litigant misconduct may not be ridden into a change of substantive law as the seamen have requested. This is especially so here because had CSCS been completely transparent from the beginning, it would have had no impact on the way these cases should have been or were decided. Whether CSCS does in fact "exist” in the Netherlands Antilles is irrelevant to the question of whether CSCS exists here in Miami, which it obviously does not. The plaintiffs-appellants have unfortunately spent a great deal of time and resources uncovering a legal nullity, and made much ado about nothing.

. The seamen's attorneys have argued that CSCS has restructured itself to avoid being sued by foreign seamen. Tax advantages notwithstanding, it is a stretch to suggest that a global enterprise of this size would go through such machinations solely to avoid anywhere from 40-50 seaman claims each year in American state courts. Even if jettisoning American courts in part motivated the layered corporate existence, retention of these foreign seamen’s cases is simply not the answer, either for retaliatory or legal reasons or for sheer hubris found in the American conviction that our judicial system provides superior reckoning. As one court has observed, "the habitual generosity of American juries is not a reason to try a case here.” Bautista v. Cruise Ship Catering Servs. Int’l, N.V., No. 03-60288-CIV, slip op. at 5 (S.D.Fla. November 18, 2003). It would naturally follow that organizing one's empire to protect against per *881 ceived excesses of our court system is likewise a permissible goal so long as legally achieved.

. Under the federal standard applicable to federal courts, there are seven factors to consider in deciding if the Jones Act is applicable to a claim. Lauritzen v. Larsen, 345 U.S. 571, 73 S.Ct. 921, 97 L.Ed. 1254 (1953). An eighth factor, the shipowner’s base of operation, was added in Hellenic Lines Ltd. v. Rhoditis, 398 U.S. 306, 90 S.Ct. 1731, 26 L.Ed.2d 252 (1970).

. See also Kinney, 674 So.2d. at 89 ("we do believe that the general regulation of foreign activities of multinational corporations more properly is a concern of the federal government, at least where the corporation's connections to Florida are tenuous or nonexistent”).

. Even if this distillation of Kinney is incorrect, and the Lauritzen-Rhoditis factors were to be considered in first examining if the Jones Act applies, our ultimate holding in this consolidated appeal would be the same. These eight factors were recently considered as to these exact corporate defendants-appel-lees — CSCS, Prestige and Costa Crociere— and the overwhelming majority of the judges sitting on the United States District Court for the Southern District of Florida have found that United States law was not applicable, and then found that the doctrine of forum non conveniens required the dismissal of personal injury claims brought by a foreign seaman while aboard these Italian-flagged Costa vessels sailing about on the seas or at a foreign port. See Membreno v. Costa Crociere, S.p.A., No. 03-61180-CIV, (S.D.Fla. Nov. 23, 2004) (Huck, J.); Hernandez v. CSCS Int’l, N.V., No. 03-20303-CIV (S.D.Fla. Dec. 8, 2003) (Graham, J.); Bautista v. Cruise Ships Catering & Serv. Int’l, N.V., 350 F.Supp.2d 987 (S.D. Fla.2003) (Dimitrouleas, J.) aff'd 120 Fed.Appx. 786, 2004 WL 2157227 (11th Cir. Sept. 16, 2004) (table); Rodriguez v. Cruise Ships Catering & Serv. Int’l, N.V., 03-60288-CIV (S.D. Fla. Nov. 18, 2003) (Dimitrouleas, J., unpublished) aff'd 120 Fed.Appx. 786, 2004 WL 2157228 (11th Cir. Sept. 16, 2004) (table); see also Rey v. CSCS Int’l, N.V., 03-60157-CIV (S.D.Fla. Nov. 24, 2004) (Martinez, J.); Melbourne v. CSCS Int’l, N.V., No. 03-62200-CIV (S.D.Fla. Oct. 5, 2004) (Cooke, J.). Though as a state court we are not required to make this finding, we agree with these federal judges that the Costa cruise line defendants are no more Jones Act employers, than these claimants are Jones Act seaman.

. While the plaintiff seamen have proved that CSCS has a rather obscure corporate existence in the Netherlands Antilles, that does not translate into making CSCS a Florida corporation, or make Florida its principal place of business. CSCS has clearly outsourced its responsibilities to a variety of different components, some here (IRSI) in Hollywood, Florida, and some elsewhere in the world in Monaco. Hence, there is nothing "puzzling” or "strange” about a foreign cruise line defendant whose only tie to Florida is a former liquidated company (CSCS Caribbean, N.V.) from presently asserting forum non conveniens. See dissent at 898.

. Because the defendants-appellees were less than forthright about CSCS' existence in the Netherlands Antilles, the affidavits of Klutz and Sacconaghi are invalidated in part. Nevertheless, the affidavits submitted demonstrate that the defendants are amenable to service of process in the Netherlands Antilles or in one of these five South American countries, thus meeting the chief concern of the first prong of the Kinney test — "the ability to perfect service of process.” Id. at 90. There ís no allegation of falsity or any controversy over the affidavits on this front.

. The issue is not whether "the cruise line defendants conduct [ ] business ... in the Netherlands Antilles,” see dissent at 894, but whether based on its clearly legal and permissible election to incorporate there, the cruise line defendants have a right to insist that the Netherlands Antilles be considered as a prospective alternate forum, among the other choices.

. While three claimants did visit Miami physicians, the record suggests this occurred in conjunction with or after consultation with counsel. The seamen's counsel have failed to dispute this or to demonstrate that these medical visits were independent decisions not generated in anticipation of litigation. Therefore, we cannot include these Florida medical visits on the private interest balancing.

. The dissent’s concern that no relevant evidence may be found in the Netherlands Antilles is immaterial. See dissent at 894-95. The real question in a forum non conveniens inquiry is whether the relevant evidence and witnesses can be found in South Florida.